UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                   :

UNITED STATES OF AMERICA,        :

                                   :     07 CR 1170 (LBS)

            vs.                :

                                   :     **DECLARATION OF**

JOSEPH P. COLLINS,             :     **JONATHAN BACH**

                                   :

                    Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JONATHAN BACH declares under penalty of perjury as follows:

1.       I am a partner in the law firm Cooley Godward Kronish LLP and one of the attorneys representing defendant Joseph Collins in this matter.  This declaration is based on my personal knowledge and my familiarity with the proceedings in this and related matters.

**<u>The Refco Investigations</u>**

2.       Following the collapse of Refco in late 2005, Cooley Godward's predecessor firm, Kronish Lieb Weiner & Hellman LLP, was retained to represent Joseph Collins in connection with various Refco-related investigations.  Collins, a partner at the Mayer Brown law firm, had been Refco's principal outside counsel for a number of years, and his firm had performed legal work for Refco in connection with numerous corporate transactions, some of which had apparently been used by Refco as instruments of its fraud.

3.       In the Spring of 2006, approximately six months after Refco's fraud had been discovered, representatives of the United States Attorney's Office, the United States Securities and Exchange Commission, and the Commodities Futures Trading Commission, among others, contacted us and asked to debrief Collins in connection with their respective investigations.  By that time, the government's investigation was already well under way.  Phillip

Bennett, Refco's former President and Chief Executive Officer, had been indicted as the

principal architect of the fraud, and at least two former senior officers at Refco, Santo Maggio

and Robert Trosten, both of whom were intimately involved in the fraud, had proffered extensive

information about their co-conspirators. All of this is well documented in the public record and

was the subject of testimony at the recent trial of *United States v. Tone Grant*, 05 Cr. 1192

(NRB).

4.       Apparently none of the information that Maggio, Trosten or others

provided implicated Collins in any material way. Shortly before Collins voluntarily appeared to

be interviewed by the above-named law enforcement authorities and regulators on April 7, 2006,

a representative of the United States Attorney's Office advised my partner, William Schwartz,

and me that Collins was considered by the government to be at most a witness (as opposed to a

subject or target) in the government's investigation.

5.       Collins answered every question asked of him at the full-day interview,

including many questions relating directly to subject matter of the present indictment. Following

the interview, there was no indication that Collins' status had changed or that he had become a

subject or target of the investigation.

6.       Nearly a year later, Collins was asked to submit to an interview to be

conducted by counsel for the court-appointed Bankruptcy Examiner in the Refco bankruptcy

matter. Once again, Collins agreed. On February 16, 2007, he answered every question asked of

him in a full-day interview, including questions relating directly to the subject matter of the

present indictment.

7.       By March 2007, the government had reached major milestones in its

investigation and prosecution of the Refco fraud. It had secured an indictment against Bennett, a

superseding indictment that added charges against Trosten, and a second superseding indictment that added charges against Tone Grant, another former president of Refco. It had also entered into a deferred prosecution agreement with BAWAG, a major Austrian bank that had admitted its involvement in the fraud and agreed to cooperate with the government. Trial was set to start against all defendants on October 9, 2007.

8.    On May 31, 2007, the government notified William Schwartz and me that it had changed its evaluation of Collins and was contemplating bringing charges against him in connection with his representation of Refco.

**The Polygraph Examination**

9.    In our May 31 call with the government and in subsequent communications, the government informed us that it had obtained evidence that Collins was aware of Refco's undisclosed $1.1 billion inter-company debt at the time of the sale of Refco to Thomas H. Lee Partners ("Lee"), and had assisted Refco in concealing it. At our behest, Mr. Collins promptly submitted to a polygraph examination. Barry Colvert, a veteran FBI polygrapher with years of experience, administered the examination. Colvert's affidavit, submitted herewith, includes his examination report, which details his procedures and the specific questions posed. In essence, Collins was asked if he was aware of the $1.1 billion inter-company debt or knew that it had been concealed from Lee.

10.    At the conclusion of the polygraph examination, Colvert reported to me that Collins had not only passed the examination, but had done so with flying colors. He reported that the results were unequivocal.

11.    We provided a copy of the polygraph examination report and all related materials to the United States Attorney's Office, along with substantial other information and material that we believed demonstrated Collins' innocence. At the same time, we made clear

that Collins was willing to submit to a further polygraph examination by a government polygrapher at the government's request.  The government did not request a further examination.

**Requests for Particulars and Discovery**

12.    We have exchanged correspondence with the government concerning the scope of discovery and the schedule for production.  Disputes remain concerning, among other things, the government's obligation to provide the defense with particulars about certain aspects of the indictment.

13.    By letter dated February 6, 2008, attached hereto as Exhibit C, we asked the government to provide the following particulars with respect to the fraud allegations in the indictment:  (a) "to identify by document, page number, and by reference to specific text, each instance as to which it is alleged that Mr. Collins, in the form of a written communication, made, or aided and abetted others in making, any false or misleading statement or omission," and (b) to "identify any specific oral statements as to which it is alleged that Mr. Collins made, or aided and abetted others in making, a false or misleading statement or omission," to "state when and where the statements were made, and to describe their substance."

14.    With respect to the forfeiture allegations in the indictment, we asked the government to "[i]dentify with particularity the specific proceeds that are alleged to be subject to forfeiture and state the theory under which they are alleged to be subject to forfeiture."  We  also requested that the government state the value of any property "constituting or derived from proceeds traceable" to the charged securities and wire-fraud offenses, or "constituting or derived from proceeds obtained directly or indirectly as a result of" the charged bank fraud offenses that the government alleges were obtained by Collins.

15.    By letter dated February 20, 2008, attached hereto as Exhibit D, the government declined to provide further particulars in response to our requests.

16.    In addition, as set forth in the same correspondence, disputes remain concerning the government's obligation to produce *Brady*, *Giglio* and 3500 material, including disputes about the dates for such production.  In the accompanying motion, the defense requests immediate production of *Brady* material and production of *Giglio* and 3500 material at least two months before trial.  The government claims that is has already complied with its *Brady* obligations and takes the position that it will not produce *Giglio* material until one week before trial, nor 3500 material until one week in advance of each witness's respective testimony.

17.    I understand, based on my review of the transcript of the Grant trial, that the volume of *Giglio* and 3500 material to be produced in this case is quite substantial.  For example, 4,000 pages of 3500 material exist for government witness Santo Maggio alone, including 400 pages of handwritten notes.  Grant Trial Transcript at 2209, 2022.  We believe that extensive 3500 material exists for other witnesses as well.  Producing such massive amounts of material at the last minute would serve no apparent purpose other than to burden the defense on the eve of and during trial.  The government has already assembled most if not all of the relevant *Giglio* and 3500 material in connection with its preparation for the Grant trial and would suffer no prejudice by having to make an earlier disclosure here.

Moreover, the government's proposed schedule delaying its 3500 production until the eve or midst of trial, differs dramatically from the practice followed in other cases of similar complexity in this district.  In *United States v Michael Hayward*, 05 Cr. 390 (SHS), a three-week securities fraud trial before the Honorable Sidney Stein involving substantially less material than exists here, I received 3500 material three weeks before the trial was set to begin.  Similarly, I understand from counsel in the Adelphia case, *United States v. Rigas*, 02 Cr. 1236 (LBS), that they were provided with 3500 approximately six weeks before

trial.  Given the complexity of this case and the volume of 3500 material, a production two months before trial will permit us to make meaningful use of the materials in defending our client at trial without requesting any delays in the presentation of evidence.

Dated: New York, New York
       June 27, 2008

By:_____
                Jonathan Bach



JONATHAN BACH
(212) 479-6470
jbach@cooley.com

Via FedEx

February 6, 2008

Neil Barofksy
Christopher Garcia
Assistant United States Attorneys
One St. Andrew's Plaza
New York, NY 10007

**RE:    United States v. Joseph P. Collins, 07 Cr. 1170 (LBS)**

Dear Neil and Chris:

Thank you for the discovery you have provided to date. We write to make sure that no item is overlooked.

We ask that you respond to this request in writing and advise us of any material or information that you do not intend to provide (or are unable to provide), so that we may consider seeking appropriate relief from the Court. If you intend to provide a response to a request at a future date, please state the date on which the response will be provided.

Each request calls for all responsive materials and information which are within the possession, custody, or control of the government, or which are either known to exist or could by the exercise of due diligence become known to the government. Moreover, each request is continuing in nature, and prompt notice is requested in the event that responsive material or information comes to the government's attention at any point in the future.

**Statements of the Defendant**

1.      Pursuant to Rules 16(a)(1)(A) and 16(a)(1)(B) of the Federal Rules of Criminal Procedure, we request any and all written or recorded statements, and the substance of any and all oral statements whether or not subsequently memorialized in writing, made by Mr. Collins, or by Mr. Collins's alleged coconspirators, or by any other person, to investigating officers or third parties, which relate in any way, directly or indirectly, to the charges in this case and the existence of which is known or by the exercise of due diligence may become known to the government.

This request includes, without limitation:

(a)      Any relevant written or recorded statements made by Mr. Collins, or copies thereof, within the possession, custody or control of any federal, state, county, or municipal government agent or attorney (hereinafter "government agent"), the existence of which is known, or by the exercise of due diligence may become known, to a government agent;

# Cooley
GODWARD KRONISH LLP

Neil Barofsky
Christopher Garcia
February 6, 2008
Page Two

(b)     Any statement or admission by Mr. Collins which may have been
incorporated in any report, memorandum, transcript, or other document or
recording prepared by a government agent, or by any person working in
conjunction with such agents;

(c)     That portion of any written record containing the substance of any
relevant oral statement made by Mr. Collins in response to interrogation
by any person then known by Mr. Collins to be a government agent;

(d)     The substance of any other relevant oral statement made by Mr. Collins
in response to interrogation by any person then known by Mr. Collins to
be a government agent;

(e)     Any and all notes prepared by Mr. Collins; and

(f)     Any and all documents which bear the signature of, or a signature
believed by the government to be the signature of, Mr. Collins.

Among other things, we ask that you *immediately* provide hard copies of notes
and reports reflecting Mr. Collins' statements to regulatory authorities at any
interview at which representatives of the United States Attorney's Office were
present.

We also ask that you *immediately* provide hard copies of notes and reports
reflecting Mr. Collins' statements to the Bankruptcy Examiner.

2.     Pursuant to the provisions of Rule 104 of the Federal Rules of Evidence, Rule
12(b)(4) of the Federal Rules of Criminal Procedure, and the defendant's rights to
effective representation by counsel and a fair trial, we request that the
government disclose whether it intends to offer in its case in chief as a statement
by Mr. Collins any of the following:

(a)     Pursuant to Rule 801(d)(2)(A) of the Federal Rules of Evidence, any
statement made by Mr. Collins in either an individual or a representative
capacity;

(b)     Pursuant to Rule 801(d)(2)(B) of the Federal Rules of Evidence, any
written or recorded statement or the substance of any oral statements as
to which Mr. Collins allegedly manifested his adoption or belief in its truth;

(c)     Pursuant to Rule 801(d)(2)(C) of the Federal Rules of Evidence, any
written or recorded statement or the substance of any oral statement
made by another individual or entity which was purportedly authorized by
Mr. Collins or is deemed to be an admission by Mr. Collins; and



Neil Barofksy
Christopher Garcia
February 6, 2008
Page Three

(d)    Pursuant to Rule 801(d)(2)(D) of the Federal Rules of Evidence, any
       statement by an agent or servant of Mr. Collins concerning a matter within
       the scope of his agency or employment made during the existence of
       such a relationship.

### Coconspirators

3.    Please provide the names of all alleged coconspirators described in the
      indictment as "known to the Grand Jury," as well as any others as they may
      become known to the government.

4.    Please provide any written, recorded, or oral statements of coconspirators,
      whether or not indicted, made to a public servant engaged in law enforcement
      activity or to a person then acting under his or her direction or in cooperation with
      him, which the government intends to offer at trial.

### Criminal Record

5.    Pursuant to Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, we
      request any and all documents which purport to show that Mr. Collins has a prior
      criminal record.

### Documents and Tangible Objects

6.    Pursuant to Rule 16(a)(1)(E)(i) and 16(a)(1)(E)(ii) of the Federal Rules of
      Criminal Procedure, we request all books, papers, photographs, videotape
      recordings, audiotape recordings, microfilm, microfiche, computer data storage
      systems, or tangible objects, which are within the possession, custody, or control
      of the government, that are (i) material to the preparation of the defense or that
      (ii) the government intends to use at trial as evidence in its case in chief.

      We further request that any documents or other items produced in response to
      this request that will be used by the government as evidence in chief at the trial
      of this matter be specifically identified from among the overwhelming volume of
      documents in this case, both to enable counsel to prepare effectively for trial and
      to afford the defendant an opportunity to file appropriate motions. See United
      States v. Turkish, 458 F. Supp. 874 (S.D.N.Y. 1978). This request includes not
      only those items that will be marked and offered into evidence, but all of those
      documents or other items that will be relied upon or referred to in any way by any
      witness called by the government during its case in chief.

      You have provided us with certain exhibits that were part of the government's
      presentation to the grand jury in this case. We request all grand jury exhibits that
      you have not yet provided. In the event that there are grand jury exhibits which



Neil Barofksy
Christopher Garcia
February 6, 2008
Page Four

you do not intend to provide to Mr. Collins, we request that you specifically explain your reasons.

7.      Pursuant to Rule 16(a)(1)(E)(iii) of the Federal Rules of Criminal Procedure we request all books, papers, documents, photographs, videotape recordings, audiotape recordings, microfilm, microfiche, computer data storage systems, or tangible objects, or copies or portions thereof, which were obtained from or belong to Mr. Collins. This request includes any documents obtained from or which were the property of any agent of, or professional consultant to, Mr. Collins in either his personal or business capacity.

8.      Please provide a detailed description of any documents, objects or physical evidence relating to this case which have been destroyed, lost, or which are no longer in the custody or control of the government. If the government contemplates destroying or releasing any items in the future, we request notice and an opportunity to object prior to any such action.

### Reports of Examinations and Tests

9.      Pursuant to Rule 16(a)(1)(F) of the Federal Rules of Criminal Procedure, we request all results or reports of physical or mental examinations, scientific tests or experiments, or copies thereof, and all documents referring or relating to such reports, that were conducted in connection with any investigation of the charges contained in the indictment, including but not limited to:

(a)     Any and all handwriting exemplars, handwriting samples, opinions of handwriting experts, handwriting or document analyses, and all documents used in such analyses;

(b)     Any and all fingerprint and palmprint exemplars, fingerprint samples, comparisons and opinions of fingerprint experts, and all documents that relate to those opinions;

(c)     Any and all electronic testing, polygraph examinations, psychological stress evaluations, hypnotic procedures, or any other scientific procedures including, but not limited to, those devised to determine whether a subject is telling the truth, or to refresh a witness's memory, and all documents that refer or relate to such examinations; and

(d)     Copies of charts, graphs, blow-ups, or other visual depictions intended for use as explanatory material at trial.



Neil Barofsky
Christopher Garcia
February 6, 2008
Page Five

### Expert Testimony and Summary Evidence

10.    Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, and Rules 702, 703 and 705 of the Federal Rules of Evidence, we request a list of the persons that the government intends to call as expert witnesses. In the case of such expert witnesses, we request that the government provide a written summary of testimony the government intends to use. The summary should include a description of the witness's qualifications. We also request a list of the identities of persons that the government intends to call to provide summary or background testimony, whether on its direct or rebuttal case, including, but not limited to, any agents of the government. We also request reports by any other persons which the foregoing witnesses have reviewed or will review in preparation for their testimony at trial.

11.    Pursuant to Rule 12(b)(4)(B) of the Federal Rules of Criminal Procedure and Rule 1006 of the Federal Rules of Evidence, please inform us whether the government will seek to offer any chart, summary, or calculation in evidence. If the government so intends, any said chart, summary, or calculation, as well as all writings, recordings, photographs, videotape recordings, or other information on which such charts, summaries, or calculations are based, should be made available for inspection and copying.

### Searches and Seizures, Other Investigative Means, and Grand Jury Procedures

12.    As a predicate to motions pursuant to Rule 12 of the Federal Rules of Criminal Procedure, we request the following:

(a)    If any evidence was obtained by search and seizure, please provide a description of such evidence and, if said search was warrantless, set forth the nature of the information upon which the search was based and the date said information was received by the government;

(b)    Please confirm that no evidence or other information in the government's possession, custody, or control was obtained through the use of a beeper, other tracking device, mail cover, or electronic or audio surveillance of any kind. If any evidence was obtained through these investigative techniques, please set forth the date, time, place, and a description of each interception and provide any and all documents related to or reflecting any information derived therefrom;

(c)    Please inform us as to whether any recording or other result of electronic or audio surveillance has been scientifically tested, altered, or treated in any way. If so, set forth the time, date, place and a description of each



Neil Barofsky
Christopher Garcia
February 6, 2008
Page Six

test or alteration, identify the examiner, and provide a copy of any reports and all documents relating or referring to such reports;

(d)     Please inform us as to whether any tapes, reports of communications, fruits of any interception or search, or notes of any interview requested herein have been or are intended to be discarded or destroyed. Please identify any such materials in sufficient detail to permit us to make a timely request to the Court for appropriate relief;

(e)     Please inform us whether any persons were present during grand jury proceedings other than the grand jurors, the witness under examination, the court reporter, and Assistant United States Attorneys; and

(f)     Please inform us whether any grand jury materials, including grand jury transcripts or any documents or information produced to the grand jury, were disclosed or released to any person other than the grand jurors, court reporters, and Assistant United States Attorneys.

(g)     We request that the government disclose the impanelment and adjournment dates of each grand jury that heard evidence concerning this case and the legal instructions provided to the grand jury before the indictment was returned.

If any evidence was obtained through any means set forth in subparagraphs (a) and (b), we also request all relevant applications, affidavits, or other supporting documents for court orders, all such court orders, all reports by the government to the court, and all tapes, logs, transcripts, and line sheets resulting from such interception or surveillance.

In connection with the request set forth in subparagraph (f) above, if disclosure of any information or material before the grand jury was made, we also request a copy of any notifications made by the government's attorneys to the district court pursuant to Rule 6(e)(3)(B) of the Federal Rules of Criminal Procedure. We also request a copy of any and all petitions requesting, or any court order permitting the disclosure of any grand jury matter, information, or material pursuant to Rule 6(e)(3)(D) of the Federal Rules of Criminal Procedure.

## Other Crimes, Wrongs, or Acts

13.     Pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rule 16(a)(1)(D) of the Federal Rules of Criminal Procedure, and Rules 403 and 404(b) of the Federal Rules of Evidence, Mr. Collins requests that the government disclose all evidence of other crimes, wrongs, or acts allegedly committed by Mr. Collins, concerning which the government may offer evidence at trial. If the government intends to offer any such evidence, set forth the date,



Neil Barofsky
Christopher Garcia
February 6, 2008
Page Seven

place, and nature of each such crime, wrong, or act to enable the Court to make a determination concerning its admissibility.

### Witnesses, Witness Statements, and Related Brady Information

14.     We request that the government provide a list of the names and addresses of all witnesses that the government intends to call in its case in chief.  See United States v. Savin, 2001 WL 243533 (S.D.N.Y. 2001); United States v. Rueb, 2001 WL 96177 (S.D.N.Y. 2001).

15.     Given the broad scope of this case, in order to expedite trial and avoid unnecessary delay during the trial, and in order to give defense counsel sufficient time to review testimony and prepare for cross-examination, we request production of all materials required to be produced pursuant to 18 U.S.C. § 3500 no later than two months before the commencement of trial.

16.     Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including United States v. Agurs, 427 U.S. 97 (1976), and Giglio v. United States, 405 U.S. 150 (1972), we request disclosure of all exculpatory or impeachment material in the government's possession, custody, or control or otherwise known to the government, including, but not limited to:

(a)     Any statement of any coconspirator known to the government, or of any officer, director or shareholder of Refco Group Ltd., LLC or its predecessors (jointly "Refco"), or of Refco Group Holdings, Inc. (RGHI), pertaining in any way to the possibility or likelihood that Mr. Collins was not a knowing participant in the fraud.

We assume, for example, that the government has debriefed numerous witnesses in connection with its investigation of this and related Refco matters, including, among others, high-ranking Refco insiders. We request immediate production of any written or oral statements by these witnesses indicating that they have no awareness, knowledge or material information concerning Collins' alleged role in the fraud.  Even if such statements have not been reduced to writing, we request written summaries of any such statements made in oral form.  United States v. Rodriguez, 496 F.3d 221 (2d Cir. 2007).

(b)     Any written or oral statements, whether or not memorialized in writing, made by any potential prosecution witness that in any way contradict or are inconsistent with or different from other oral or written statements he or she has made or his or her anticipated trial testimony;

(c)     Any written or oral statements, whether or not reduced to writing, made to the prosecution, its agents, or representatives by any individual, whether



Neil Barofksy
Christopher Garcia
February 6, 2008
Page Eight

> or not that individual is a witness, that in any way contradict, or are
> inconsistent with or different from any statements made by a prosecution
> witness, and the name and address of the individual making any such
> statements;

(d)    Any and all records and information revealing prior criminal arrests,
convictions, or guilty verdicts or juvenile adjudications including, but not
limited to, relevant "rap sheets" of each witness the government intends
to call at trial;

(e)    Any and all records and information revealing misconduct, criminal acts,
or bad acts of any witness the government intends to call at trial;

(f)    Any and all considerations or promises of consideration given during the
course of the investigation or prosecution of this matter by any law
enforcement officials, including prosecutors, FBI agents, police, or
informers, to or on behalf of any witness the government intends to call at
trial, or any such consideration or promises requested by such witness, or
any such consideration expected or hoped for by any such witness at any
future time.  Such "consideration" refers to anything that arguably could
be of value or use to a witness or a witness's employer including, but not
limited to: (i) formal or informal, direct or indirect immunity, leniency,
favorable treatment or recommendations, or other assistance with respect
to any pending or potential criminal, parole, probation, pardon, clemency,
civil, administrative, health related, or other matter involving the state or
federal government, or any other matter involving the state or federal
government, any other authority, or other parties; (ii) civil, criminal, or tax
immunity grants to a witness or a witness's employer; (iii) payments of
money, rewards or fees, witness fees, and special witness fees; (iv)
provisions of food, clothing, transportation, legal services, or other
benefits; (v) letters to anyone informing the recipient of a witness's or a
witness's employer's cooperation; (vi) recommendations concerning
federal aid or benefits; (vii) promises to take affirmative action to help the
status of a witness in a profession, business, or employment, or promises
not to jeopardize such status; (viii) aid in efforts in securing or maintaining
the business or employment of a witness or a witness's employer; and (ix)
anything else that arguably could reveal an interest, motive, or bias in a
witness or a witness's employer in favor of the prosecution or against Mr.
Collins or act as an inducement to testify or to color the witness's
testimony;

(g)    Any and all statements – formal and informal, oral or written – by the
government, its agents, and representatives to any person (including
counsel for such persons or counsel for such persons' employer) whom
the government intends to call as a witness at trial pertaining in any way



Neil Barofsky
Christopher Garcia
February 6, 2008
Page Nine

to the possibility, likelihood, course, or outcome of any government action – state or federal, civil or criminal – or immigration matters against the witness, the witness's employer, or anyone related by blood marriage to the witness;

(h)     Any and all threats, express or implied, direct or indirect, or other coercion directed against any witness whom the government intends to call at trial, any employer of such witness, or anyone related by blood or marriage to the witness, to induce testimony favorable to the government; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witness, any employer of such witness, or anyone related by blood or marriage to the witness; any probationary, parole or deferred prosecution status of any such witness, any employer of such witness, or anyone related by blood or marriage to the witness; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such witness, any employer of such witness, or anyone related by blood or marriage to the witness, and the state or federal government, or over which the state or federal government has real, apparent, or perceived influence;

(i)     A list of any and all requests, demands, or complaints made to the government by any witness or by any employer of such witness whom the government intends to call at trial that arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of the witness for favorable governmental action on behalf of the witness or on behalf of any employer of such witness (regardless of whether or not the government has agreed to provide any favorable action);

(j)     All documents and other evidence regarding drug and alcohol usage and/or dependency by any individual the government intends to use as a witness at trial including, but not limited to, records relating to treatment of such individual in any federal, state, territorial, city, or military drug or detoxification program;

(k)     All documents and other evidence regarding any physical or mental disease, disability, or disorder affecting any individual the government intends to use as a witness at trial, or any member of the immediate family of any such witness, including, but not limited to, records of hospitalization or other treatments for such physical or mental disease, disability, or disorder;

(l)     Any material not otherwise listed that reflects or evidences the motivation of any witness or the witness's employer to cooperate with the



Neil Barofsky
Christopher Garcia
February 6, 2008
Page Ten

government, or reflects or evidences the competency or credibility of the government's witness or the witness's bias or hostility against Mr. Collins;

(m) A list of all other judicial proceedings involving a criminal matter in which any person who is a potential government witness in this action participated as a witness, was identified as an unindicted coconspirator or an aider and abettor, or was charged as a defendant;

(n) Any statements or documents including, but not limited to, grand jury testimony and federal, state, and local tax returns made or executed by any potential government witness at the trial in this action which the government knows, or through reasonable diligence should have reason to know, is false;

(o) The existence and identification of each occasion on which any witness, including any witness who is or was an informer, accomplice, coconspirator, or expert, has testified before any court or other tribunal or body, or otherwise has given an official narration, in relation to Mr. Collins, the investigation, or the facts of this case;

(p) Any requests prepared by the government for permission to grant immunity or leniency for any witness or a witness's employer, whether or not such request was granted;

(q) Any statements read or given by the government to the departments of Pretrial Services or Probation in connection with the prosecution or conviction of any government witness or potential government witness;

(r) A copy of all letters and/or memoranda written to the court in connection with the sentencing of any government witness;

(s) Any and all other records and/or information that arguably could be helpful or useful to the defense in impeaching or otherwise detracting from the probative force of the prosecutor's evidence;

(t) The same records and information requested in items (a) through (s) with respect to each non-witness declarant whose statements are or may be offered in evidence;

(u) The names and addresses of all persons whom the government, its agents, and representatives believe to have relevant exculpatory knowledge or information with reference to the charges contained in the indictment;



Neil Barofksy
Christopher Garcia
February 6, 2008
Page Eleven

(v)    Copies of any and all records of law enforcement or other governmental
agencies reflecting intra-departmental disciplinary action taken against
any law enforcement or agency official who will testify in this proceeding,
including all such records from any governmental agency for which the
witness previously worked; and

(w)    Copies of any and all records of any law enforcement or other
governmental agency reflecting any commendations, awards, or
recognition of any kind received by, or requests for any commendations,
awards, or recognition of any kind made by, any government agent or law
enforcement officer for any work, action, or conduct undertaken in
connection with the investigation and prosecution of this case.

## Further Particulars

17.    Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, please provide
particular information with respect to the following:

(a)    Please identify all coconspirators described in the indictment as known to
the grand jury.

(b)    Please identify by document, page number, and by reference to specific
text, each instance as to which it is alleged that Mr. Collins, in the form of
a written communication, made, or aided and abetted others in making,
any false or misleading statement or omission.

(c)    Please identify any specific oral statements as to which it is alleged that
Mr. Collins made, or aided and abetted others in making, a false or
misleading statement or omission.  Please state when and where the
statements were made, and describe their substance.

(d)    Please identify specifically all statements by coconspirators that are
alleged to be (i) false statements of material fact, (ii) misleading
statements of material fact, or (iii) omissions of material fact.

(e)    Please identify specifically all statements by Refco management that
allegedly misrepresented the amount of its customer losses, state when
and where those statements were made, and provide the substance of
the alleged misrepresentations.

(f)    With respect to ¶¶ 70 and 85 of the indictment, identify the false
representations allegedly made to any bank or banks, including but not
limited to HSBC Bank, U.S.A., N.A.



(g)     With respect to ¶ 71, specify the "monetary transactions in criminally derived property" in which Refco management allegedly engaged and attempted to engage.

(h)     With respect to ¶ 72(c), (a) list all Refco customers with whom Refco is alleged to have participated in "round-trip loan" transactions, including, but not limited to, providing the identities of the Three Customers referenced in ¶ 20 of the indictment, together with the dates of those transactions, and (b) state whether the government alleges that Mr. Collins participated in or knew of any "round-trip" loan transactions between Refco and BAWAG.

(i)     With respect to ¶ 72(e), (a) list Phillip Bennett's false statements and omissions to Refco auditors and indicate when they were made, (b) provide the substance of those statements, (c) state how Mr. Collins "helped Refco management" to make such statements, and (d) specify all respects in which the government alleges that Refco's 2004 financial statements were (i) false and (ii) misleading.

(j)     With respect to ¶ 73 (f), identify any statements of Mr. Collins's by which, the government alleges, Mr. Collins agreed to conceal the terms of the PPA or the buy-out of BAWAG participation rights under the PPA, and specify when and to whom any such statements were made.

(k)     With respect to ¶ 73 (g)-(j) list the false or otherwise misleading statements that the government alleges were made to Thomas H. Lee Partners or its representatives, identify the persons by whom and to whom those statements were allegedly made, and identify the document referenced in ¶ 73(j).

(l)     With respect to ¶ 73 (l), identify the communications through which Mr. Collins allegedly directe[d] others not to disclose information relating to RGHI's buyout of the participation right from BAWAG, and the identities of the persons so directed.

18.     Identify with particularity the specific proceeds that are alleged to be subject to forfeiture and state the theory under which are they alleged to be subject to forfeiture. Among other things:

(a)     With respect to ¶ 86 of the indictment, (a) state the statutory and legal theory on which you allege that Mr. Collins would be required to forfeit property valued at, at least, $2.4 billion, and (b) state the value of any "property constituting or derived from proceeds traceable" to the commission of the charged securities and wire-fraud offenses that the government alleges were obtained by Mr. Collins.


**Cooley**
GODWARD KRONISH LLP

Neil Barofksy
Christopher Garcia
February 6, 2008
Page Thirteen

    (b)  With respect to ¶ 87, (a) state the statutory and legal theory on which you allege that Mr. Collins would be required to forfeit property valued at, at least, $800 million, and (b) state the value of any "property constituting or derived from proceeds obtained directly or indirectly as a result of" the charged bank fraud offenses that you allege were obtained by Mr. Collins.

  We also request that that government preserve and maintain all relevant notes, reports, and recordings prepared by or for government agents or prosecutors, as well as any document, paper, tangible object, tape recording, or other potential item of evidence which is now or may hereafter come within the government's possession, the production of which is requested in this letter.

  Thank you for your attention to these requests.

           Sincerely,

           Jonathan Bach



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 20, 2008

**BY FIRST CLASS MAIL**

Jonathan Bach, Esq.
Cooley Godward Kronish LLP
1114 Avenue of the Americas
New York, NY 10036

Re:    <u>**United States v. Joseph P. Collins,**</u>
           **07 Cr. 1170 (LBS)**

Dear Mr. Bach

We write in response to your letter of February 6, 2008 regarding various discovery, bill of particulars, and *Brady* issues.

<u>Discovery Demands</u>

Enclosed with this letter is a copy of the interview notes of your client's meeting with our Office in 2006. As to your request for interview notes that the Bankruptcy Examiner took of Collins, we do not have those documents in our custody or control. Your requests also include the Bankruptcy Examiner's report itself. Based on our previous discussions, we were under the impression that you had a copy of that report. If we are wrong, please let us know and we will forward to you a copy of the report.

Your letter makes other various particularized discovery demands. As you know, the Government has provided and is in the process of providing the discovery required to be provided by Federal Rule of Criminal Procedure 16(a). We have complied and will continue to comply with those obligations. Indeed, many of the documents that you seek in your letter (e.g., handwritten notes of your client and documents signed by your client) have already been provided to you in the materials produced by the Government thus far. To the extent that your discovery demands go beyond the requirements of Rule 16(a), the Government declines to produce the requested materials, including, among other things, your request that we identify in advance of trial "all statements made by Mr. Collins in either an individual or a representative capacity."

With respect to your request for a list of coconspirators, we make reference to the

Jonathan Bach, Esq.
February 20, 2008
Page 2

recent filing in <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192, in which we identified the coconspirators of the charged fraud. We will provide to you an updated list for this matter 30 days before trial.

We do not believe that your client has a prior criminal record.

With respect to your request for an exhibit list, we have enclosed a copy of the exhibits we currently intend to use in <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192. Although we are under no obligation to do so, we will provide you an exhibit list specific to this matter 30 days in advance of the trial.

At this time, we do not intend to call an expert witness to testify at trial. Included in the exhibits produced with this letter are several draft summary charts that will be used in the upcoming trial of <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192. We expect that similar charts will be used in the trial in this matter. We will provide you with updated charts as the trial in this matter approaches.

With respect to your specific requests regarding 404(b) evidence, we will make such notice no later than four weeks prior to trial.

With respect to a witness list, we refer you to the recent filing in <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192. We expect there to be a significant overlap in witnesses in the two trials. We will provide you with a draft witness list for this matter 30 days in advance of trial. As to *Giglio* and 3500 material, we will produce them to you on the same schedule as ordered in <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192, that is, *Giglio* material one week before the commencement of trial and 3500 material one week before the witness is to testify. Of course, you will also have the benefit of the trial testimony of the witnesses at the trial of <u>United States</u> v. <u>Bennett</u>, S3 05 Cr. 1192, scheduled to begin on March 17, 2008.

As to your request concerning the Grand Jury, you have failed to make any showing that would justify the disclosure you seek, and we decline to produce to you the information requested. *United States* v. *Sells Engineering*, 463 U.S. 418, 443 (1983); *United States* v. *Tochelmann,* 1999 WL 294992, at *2-3 (S.D.N.Y., May 11 1999).

Jonathan Bach, Esq.
February 20, 2008
Page 3

Brady Material

       The Government is unaware of any exculpatory information regarding the defendant and the charged offenses. We decline to respond to your request in paragraph 16(a) as being well beyond the requirements of *Brady* and its progeny. To the extent that the remainder of paragraph calls for information the Government is required to disclose, it will be disclosed one week prior to trial with the other *Giglio* material.

Bill of Particulars

       You have also requested a bill of particulars. Obviously, the Indictment in this matter is incredibly detailed, and we have also provided to you, although plainly not required to do so, a full set of the Grand Jury exhibits in this case, as well as, with this letter, the marked trial exhibits for the upcoming trial in United States v. Bennett, S3 05 Cr. 1192. Your request demands a wealth of evidentiary detail that is not required to allow the defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense. Fed. R. Crim. P. 7(f); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Much of the requested evidentiary detail is contained in the discovery already provided to you, in particular within the Grand Jury exhibits previously produced to you and the enclosed trial exhibits produced today. The remainder of your requests demand material that is not required to be produced under the law.

       With respect to any additional or particular questions that you may have about the discovery in this case, we are, of course, available to discuss these issues with you.

              Very truly yours,

              MICHAEL J. GARCIA
              United States Attorney
              Southern District of New York

            By:

              Neil M. Barofsky
              Christopher L. Garcia
              Assistant United States Attorneys
              (212) 637-2333/2328

Enc.