**REDACTED COPY**

# Affidavit of Barry D. Colvert

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
UNITED STATES OF AMERICA             :    No. 07 CR 1170 (LBS)
                                     :
                                     :
v.                                   :
                                     :    AFFIDAVIT OF BARRY D. COLVERT
                                     :
JOSEPH P. COLLINS,                   :
                                     :
            Defendant.               :
                                     :
                                     :
------------------------------------ X

BARRY D. COLVERT, being duly sworn, deposes and says:

1. I am a forensic polygrapher and consultant with extensive experience in the field. I received my polygraph training at the U.S. Army Military Police School in Fort McClellan, Alabama, and at the Advanced Polygraph Studies Program of the F.B.I. Academy in Quantico, Virginia. I was a Special Agent of the F.B.I. from 1962 to 1997 and served as the primary polygraph examiner and interrogator for the Washington, D.C. Field Office of the F.B.I. from 1980 to 1997. Since 1997, I have been retained periodically by the Department of Justice in espionage, homicide, and narcotics cases. My curriculum vitae is attached as Exhibit A to this affidavit.

2. On June 26, 2007, I conducted a polygraph examination of Joseph P. Collins. The test followed the modified general question format, a type of control question test. The polygraph measured Collins's thoracic and abdominal respiration, skin resistance, and relative blood pressure. Two different analyses of the resulting data were conducted, each using a

different methodology, and both indicated an extraordinarily low probability of deception in Collins's response to the relevant questions. My report of the results of the polygraph examination is attached as Exhibit B to this affidavit.

3. The control question polygraph technique can be and has been extensively tested. It is based on the scientific theory that certain physiological responses occur in an individual consciously trying to deceive another. These responses include measurable changes in blood pressure, pulse, respiration, and skin resistance. The control question technique measures the differences in the subject's response to relevant questions, or those accusatory questions directed toward the issue under investigation. The control questions are often discomfiting, and are designed to make the innocent subject question the truthfulness of his response. The rationale behind the technique is that the subject will react more strongly to the relevant questions than to the control questions if he attempts to lie in answering the relevant questions. Numerous laboratory and field studies have been conducted to test the accuracy of the control question polygraph technique and resulted in the conclusion that it is a highly accurate measure of deception.

4. Polygraph tests, and in particular the control question technique, have been the subject of extensive publication in peer reviewed scientific journals, including *Law and Human Behavior*, *The Journal of Applied Psychology*, and *Psychophysiology*.

5. The laboratory and field studies of the control question polygraph that have been conducted, as well as the analyses and articles that have been published in peer reviewed journals, indicate very low error rates. Error rates are especially low with respect to "false negative" results (i.e., results indicating a lack of deception where deception occurs) as opposed to "false positive" results (i.e., results indicating deception where there is none).

6.  The polygraph community maintains standards to control the control question polygraph technique. In order to practice as a polygraph examiner for a federal agency, an individual must attend one of a few specific polygraph schools and obtain a certificate. A number of states have extensive licensing regulations for practicing polygraphers. Virginia, New Mexico, and North Dakota are among these, and I am licensed in all three. Moreover, the American Polygraph Association, of which I am a member, accredits polygraph schools that meet certain strict criteria and publishes the industry's standards of practice and code of ethics.

7.  The control question polygraph examination is generally accepted in the scientific community of psychophysiologists. Moreover, the control question polygraph is heavily relied upon by many federal, state, and local law enforcement agencies, including the Department of Justice.

_____
BARRY D. COLVERT

Sworn to before me this 2nd day of June, 2008

_____

OUSMAN A. JALLOW
Notary Public
Commonwealth of Virginia
7062308
My Commission Expires Sep 30, 2010

3

REDACTED COPY

# Exhibit A

# Barry D. Colvert
*Forensic Polygrapher and Consultant*

**REDACTED COPY**

## INVESTIGATIVE QUALIFICATIONS

1997 to present — Forensic Polygrapher and Consultant
Utilized by Federal and private attorneys in espionage, homicide, narcotics, white collar crime, sexual offense, political corruption, and Independent Counsel investigations. High profile cases include:

- Wen Ho Lee, Los Alamos Nuclear Weapons Scientist
- Ronald Carey, Former President of International Brotherhood of Teamsters Union
- Congressman Gary A. Condit, disappearance and death of Intern Chandra Levy
- Terrorist Detainees at Guantanamo Bay Naval Base, Cuba

1962 to 1997 — Special Agent, Federal Bureau of Investigation

1980 to 1997 — Primary Polygraph Examiner and Interrogator for F.B.I. Washington, D.C. Field Office. Conducted polygraph examinations in all areas of F.B.I. jurisdiction to include white-collar crime, political and public corruption, fraud, sexual offenses, homicide, counter-intelligence, and espionage. High profile cases include:

- Primary polygraph examiner and interrogator in major espionage cases: Walker Family spy ring, Israeli spy Jonathan Pollard, Soviet spies Aldrich and Rosario Ames, East German spy Huseyin Yildirim, Hungarian spy Roderick Ramsay, and Greek spy Steven Lalas.
- Polygraph examiner by special request of Independent Counsel investigators in Iran-Contra and Secretary of Labor Raymond Donovan inquiries.
- Polygraph examiner testified in the *first* Federal prosecution of a defendant indicted for murder in which the victim's body was never found.
- Polygraph examiner designated in criminal, counter-intelligence, and terrorism investigations in the Far East, Europe, South America, and Republics of the former Soviet Union.

## DETECTION OF DECEPTION TRAINING

1980 U.S. Army Military Police School, Fort McClellan, Alabama
1983 F.B.I. Advanced Polygraph Studies Program, F.B.I. Academy, Quantico, Virginia

## EDUCATION

1962 Bachelor of Arts, Physics, Hendrix College, Conway, Arkansas
1983 Graduate hours, Psychology, University of Virginia

## PROFESSIONAL AFFILIATIONS

Society of Former Special Agents of the F.B.I.
American College of Forensic Examiners
American Association of Police Polygraphers

American Polygraph Association
Virginia Polygraph Association
Virginia State Polygraph Advisory Board

**REDACTED COPY**

# Exhibit B

# Barry D. Colvert

*Forensic Polygrapher*
*Virginia license 1601 000684*
*New Mexico license 1639*
*North Dakota license D-00033*
PO Box 7133
Alexandria, VA 22307-7133

**REDACTED COPY**

## POLYGRAPH EXAMINATION REPORT
## 07-054

| CLIENT |
|---|
| Jonathan P. Bach, Attorney at Law |
| Cooley Godward Kronish LLP |
| 1114 Avenue of the Americas |
| New York, New York 10036-7798 |

| DATE OF EXAMINATION | START/FINISH |
|---|---|
| 06.26.2007 | 1405/1600 |
| EXAMINEE NAME | SOCIAL SECURITY NUMBER |
| Joseph Patrick Collins | |
| HOME ADDRESS | DATE & PLACE OF BIRTH |
| | 04.09.1950 |
| | Chicago, Illinois |
| PRESENT EMPLOYER & POSITION | CITIZENSHIP/ALIEN REGISTRATION # |
| 04.1994 – present: Senior Partner | |
| Mayer Brown Rowe & Maw, Chicago, Illinois | U.S. |
| CONCLUSION | |
| **X  NO DECEPTION**   ____ DECEPTION   ____ INCONCLUSIVE | |

**INFORMATION:**

Phillip R. Bennett, Robert C. Trosten and Tone N. Grant have been charged in the United States District Court, Southern District of New York with Securities Fraud and related offenses. These charges stem from the sale of REFCO Group Ltd., owned in part by Phillip R. Bennett, to Thomas Lee in June 2004. At the time of this sale there was over a billion dollars in inter-company debt between REFCO Group Ltd. and REFCO Group Holdings, which was owned and controlled by Bennett. This inter-company debt was concealed from Lee. Joseph Collins is now the subject of a federal investigation being conducted by the United States Attorneys' Office in connection with this sale. Collins is alleged to have been aware of the existence and extent of inter-company debt at or about the time of the sale of REFCO to Lee. Collins denies this allegation. Collin's attorney, Jonathan P. Bach, has requested a polygraph examination addressing this issue.

## EXAMINATION:

On 06.26.2007 Joseph Patrick Collins reported to the offices of Cooley Godward Kronish, LLP at 1114 Avenue of the Americas, New York, New York for the purpose of undergoing a polygraph examination. Collins was initially interviewed in the presence of attorney Jonathan P. Bach to obtain biographical/medical information and to discuss his professional relationship with Phillip R. Bennett. Collins was then asked specifically about the period leading up to the sale of REFCO Group Ltd. to Thomas H. Lee Partners in June 2004. Collins was asked if he was aware of the sizeable "inter-company" debt between those two entities at or during that time. Collins stated that he was completely unaware of any "inter-company" debt at the time of the sale or that the debt was being concealed from Lee. Collins added that when he finally learned of this he was dumbfounded. Collins stated that at the time of sale to Lee he had no suspicion or knowledge of this debt. Following the interview, Collins was afforded a polygraph examination utilizing the relevant questions listed below:

A. At the time of the sale of REFCO stock to Thomas Lee, were you aware that the inter-company debt was being concealed from him?
Answer: no

B. At the time of the sale of REFCO stock to Thomas Lee, had you been told there was over a billion dollars in inter-company debt?
Answer: no

C. At the time of the sale of REFCO stock to Thomas Lee, did you tell anyone that there was over a billion dollars in inter-company debt?
Answer: no

2

## ANALYSIS:

Five polygrams/charts (which included an acquaintance or "stim" test) were collected using a Toshiba Tecra 9000 computer and Lafayette LX4000 software. This software obtained recorded tracings representing thoracic and abdominal respiration, skin resistance and relative blood pressure. All of these physiological tracings were stored in the computer along with the time that the questions were asked as well as text of each question. The format of the test was the Modified General Question Test (MGQT). It included the relevant questions addressing the issues to be resolved by the examination, comparison questions to be used in analysis, and neutral or irrelevant questions. All questions were reviewed with Collins prior to the test. The charts collected were subjected to a numerical evaluation that scored the relative strength of physiological reactions to relevant questions with those of the comparison questions. An analysis was conducted using a three (3) point scale (-1, 0, +1). If reactions were deemed to be greater at the relevant questions, then a negative or minus (-) score was assigned. If responses were deemed to be greater at the comparison questions, then a positive or plus (+) score was assigned. A decision of deceptive is rendered if <u>any</u> question score is -3 or less. A decision of non-deceptive is rendered if the value for <u>each</u> question score is +3 or greater.

Collins' scores utilizing the three (3) point scale are +5 at Question A, +8 at Question B and +7 at Question C. Based upon this analysis, it is the professional opinion of this examiner that Collins' responses to the above captioned relevant questions are not indicative of deception.

A second analysis was conducted utilizing a scoring algorithm developed by the Johns Hopkins University Applied Physics Laboratory (PolyScore Version 5.5) which concluded, "NDI (No Deception Indicated)....Probability of Deception is less than 0.01."

06.28.2007 BDC/src

3