UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA          :    No. 07 CR 1170 (LBS)
                                  :
                                  :
v.                                :
                                  :    **SUPPLEMENTAL AFFIDAVIT OF BARRY**
                                  :    **D. COLVERT**
JOSEPH P. COLLINS,                :
                                  :
            Defendant.            :
                                  :
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

BARRY D. COLVERT, being duly sworn, deposes and says:

1.  I respectfully submit this Affidavit to supplement my earlier Affidavit of June 24, 2008.

2.  There have been significant advances in polygraph technology within the past ten years that have increased the accuracy of polygraph examination results, including advances based on innovations in the use of computerized and digital technologies. One such innovation is the Johns Hopkins University Applied Physics Laboratory scoring algorithm, which has been updated on an ongoing basis over the past decade and which I used in connection with my examination of Joseph Collins. This computer program analyzes digitized polygraph charts mathematically and has the ability to capture extremely subtle variations in physiological responses that a field examiner might not otherwise recognize. The program incorporates data from a great number of confirmed individual cases for comparison and is updated regularly with newer algorithms and the latest case data.

3. I understand that the government correctly points out in its brief that I did not employ an "activity monitor" during my examination of Joseph Collins. An activity monitor is a device used to detect whether the subject of the examination is flexing certain muscles in an attempt to manipulate his responses. However, I took other appropriate measures that are recognized in the field to safeguard against the possibility of such manipulation. During the examination, I positioned Collins so that I could closely observe him. Had I observed any physical movement during the testing, it would have been marked on his charts at the time of occurrence to be taken into consideration in the scoring process. I also employed an acquaintance or stimulation ("stim") test at the outset of the examination to measure Collins's physiological responses to questions that did not pertain to the relevant issues. The stim test enabled me to establish a baseline "norm" by which to gauge his reactions. Collins's reactions to the relevant questions posed during the examination were consistent with his reactions to the questions posed during the stim test, and it does not appear that he tried to manipulate, create or enhance his responses in any way. Moreover, Collins's polygraph examination data show no sign of an attempt to control breathing or of any abrupt or sudden changes in electro-dermal or cardiovascular activity that would appear to be "out of the norm." Nothing in Collins's charts shows any significant changes in his response patterns that would suggest the use of muscular or other countermeasures to defeat the test.

4. Based on the results of the polygraph examination I administered, the probability that Collins was deceptive in his responses to the relevant questions is extraordinarily low. A polygraph examination can have one of three results: no indications of deception, indications of deception, or inconclusive. The charts produced during the examination of Collins were scored in two different ways, by a traditional three-point scale and by the Johns Hopkins University Applied Physics Laboratory's scoring algorithm. Both methods found no indications of deception, and the Johns Hopkins scoring algorithm resulted in an extremely low—less than



0.01—probability that Collins was deceptive in his answers to the relevant questions. The score of less than 0.01 is the lowest possible score that the current algorithm will project.

     5.     I understand that the government has characterized the polygraph examination I administered as employing imprecise questions that permitted a non-deceptive response. However, mere semantic objections such as those offered by the government should not affect polygraph results. The operative inquiry is whether the question essentially addresses the bottom line issue. If the terms used in the questions are basically the same in the subject's mind as the terms that arguably could have been used, the polygraph results should be unaffected. For example, the difference between "$1 billion" and "over $1 billion" should not affect the examination results considering the size of the numbers involved and the focus of the questions on Collins's knowledge of such a large inter-company debt. It should be noted that the first relevant question posed to Collins, to which he gave a non-deceptive response, concerned the existence of *any* concealed inter-company debt, regardless of actual financial amount. Moreover, I am informed that Thomas H. Lee himself was personally involved in the transaction and that the parties referred to Thomas H. Lee Partners by using his personal name, in which case the use of his name to denote the entity should not affect the results of the polygraph. I am also informed that the individuals on the Refco side of the deal thought of Lee as the company's buyer. In this context, where the question is whether Collins was aware of a concealed inter-company debt, the difference between a sale and a sale and merger seems another mere technicality that should have no effect on the results of the examination.

*[signature]*
BARRY D. COLVERT

Sworn to before me this 26th day of August, 2008

*[signature: Katherine Ripley]*

*[Notary stamp:]*
KATHERINE RIPLEY
Notary Public
Commonwealth of Virginia
179641
My Commission Expires Jun 30, 2010

4

*BDC*