UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                 :
UNITED STATES OF AMERICA       :
                                 :
    -v-                         :
                               :    S1 07 Cr. 1170 (LAP)
JOSEPH P. COLLINS,          :
                               :
                Defendant.    :
                               :
------------------------------------------------------x


# GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO OFFER EXPERT TESTIMONY


PREET BHARARA,
United States Attorney for the
Southern District of New York,
Attorney for the United States
of America


Harry A. Chernoff
Michael A. Levy
Edward A. Imperatore
Assistant United States Attorneys,

    - Of Counsel -

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT:  The Proffered Expert Opinion Testimony Of David Bronner
            Should Be Excluded.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A.    Applicable Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B.    Discussion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      1.    Expert Testimony About the PPA's Materiality Is Inadmissible... . . . . . . . . . . . . 6

      2.    Expert Testimony About Transactional Lawyers' Practices
            Is Inadmissible.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## CASES

*Andrews v. Metropolitan N. Commuter R.R. Co.*, 882 F.2d 705 (2d Cir. 1989). . . . . . .   10

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). . . . . . . . . . . . . . . . . . .   5, 10

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6, 7

*Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505 (2d Cir. 1997). . . . . . . . . . . . . . .   7, 9, 14

*Media Sport & Arts* v. *Kinney Shoe Corp.*, 1999 WL 946354 (S.D.N.Y. 1999). . . . . . . .   8

*Primavera Familienstifung v. Askin*, 130 F. Supp. 2d 450 (S.D.N.Y. 2001).  . . . . . . .   6, 7

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991). . . . . . . . . . . . . . . . . . . . . . .   7, 8

*United States v. Dessanges*, 2000 WL 294849 (S.D.N.Y.  2000). . . . . . . . . . . . . . . . . .   8

*United States v. Duncan*, 42 F.2d 97 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . .   4, 9

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . .   10

*United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . .   7, 9

*United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . .   14

*United States* v. *Zafar*, 291 Fed. App'x 425 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . .   10, 11

## FEDERAL RULES

Fed. R. Evid. 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Evid. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Evid. 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

Fed. R. Evid. 704. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5, 6, 14

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION TO OFFER EXPERT TESTIMONY

### PRELIMINARY STATEMENT

The Government respectfully files this motion in opposition to the defendant's motion *in limine*, dated August 14, 2012, to permit expert testimony from David Bronner, Esq., a corporate lawyer, on two broad topics: the meaning of the merger agreement through which the defendant and his co-conspirators worked the charged fraud, and the general practices of transactional lawyers like the defendant.  Neither topic is appropriate for expert opinion.

### FACTUAL BACKGROUND

 The Indictment charges Joseph Collins, the former principal outside lawyer for Refco, with conspiring with others to hide the financial condition and economic structure of Refco from Refco's banks, counterparties, auditors, investors, and potential investors.  Specifically, Indictment alleges that Collins and others intentionally hid, among other things, the existence of a large debt owed to Refco by Refco's parent company  – RGHI – that Refco was using to conceal Refco's own operational losses.  The Indictment alleges that the conspirators did this, in part, through a series of short-term round trip loan transactions, the documentation for which was prepared by Collins and underlings at Collins's law firm.  The Indictment also alleges that the conspirators concealed, among other things, the full extent of the large economic interest in Refco that Refco had been forced to sell to an Austrian bank known as BAWAG in exchange for cash from BAWAG to cover Refco's operational losses.

The Indictment alleges that, in 2004, as a result of successfully concealing Refco's true economic condition, Collins helped Refco sell a majority interest to Thomas H. Lee Partners ("THL") and

other investors through a $2.4 billion leveraged buyout (the "LBO").  The terms of the LBO were memorialized in an agreement titled "Equity Purchase & Merger Agreement" (the "EPMA").  In connection with his work on the LBO on behalf of Refco, the defendant is charged with helping Refco defraud THL by making and confirming claims he knew were not true (such as a claim that Refco had $500 million in excess working capital) and by concealing other matters from THL (most importantly, the intercompany debt exceeding $1 billion owed to Refco by RGHI) that Refco was required to disclose.  In particular, during the due diligence process that preceded the execution of the EPMA, and then through representations contained within the EPMA itself, Collins participated in the wilful concealment of a document he had drafted, the Proceeds Participation Agreement (the "PPA"), that memorialized the terms of BAWAG's large investment in Refco.

The essence of the defense is that Collins was misled by his client and was unaware of the the intercompany debt exceeding $1 billion and Refco's false claim to have $500 million in excess working capital.  He contends that he was unaware of the fraudulent purpose of the round-trip loan transactions on which he worked.  With respect to the PPA – which he cannot dispute he was aware of – Collins contends that there was no obligation to disclose it in response to THL's various due diligence requests, or to reference it in the EPMA's various representations about what had been disclosed to THL, because, Collins claims, Refco's CEO advised Collins that an agreement had been reached with THL to omit due diligence on "upstream" matters concerning RGHI and not Refco, and, in any event, the PPA was immaterial to the sale of Refco.

To address this issue at trial, the Government will offer fact witnesses to give lay opinion testimony as to the scope of the due diligence that THL requested, the meaning of the EPMA's

representations that various items had been fully disclosed, and the materiality of the PPA that Collins and his coconspirators nonetheless concealed.  These witnesses will testify based on their direct interactions with the defendant, their personal participation in the back-and-forth of the due diligence process, and their personal involvement in negotiating the EPMA that resulted from it.[1]  The Government will also of course offer the documents in question and make arguments to the jury about the meaning of certain communications and contracts.

In contrast, the defendant proposes to call as an expert witness a lawyer who has reviewed this evidence and prior trial transcript in order to reach the opinion that, based on his interpretation of the EPMA and his experience as a corporate lawyer, the PPA was not material and need not have been disclosed – an opinion that aims to answer for the jury the critical question of Collins's criminal intent.  Mr. Bronner also proposes to offer additional generalities  about transactional law practice that purport to be relevant to Collins's conduct.  Mr. Bronner cannot take the witness stand on either basis.[2]

---

[1] The Government will in the near future be filing a motion *in limine* to permit the Government to elicit lay opinion testimony from certain fact witnesses about the meaning of various due diligence requests that the witnesses made and received during the central transaction at issue in this case, as well as the meaning of subsequent contractual representations that those due diligence requests had been met.  This testimony will be based in part on the personal participation of each of these witnesses in the discussions surrounding due diligence and the negotiations leading to the EPMA, including discussions with the defendant.  In contrast to the testimony proposed by the defendant from an expert witness who has no personal knowledge of this EPMA or the due diligence process that preceded it, this lay opinion testimony should be admitted.  The Government provides notice of this motion now because the instant motion of the defendant is predicated in part on the Government's elicitation of this testimony at the last trial, which was permitted in some cases without objection and in some cases over Collins's objection.

[2] At the first trial, Collins proffered the same expert to offer similar testimony on a broad variety of topics concerning the role of lawyers in a corporate transaction, the ethical obligations of lawyers representing clients, the customary practices of lawyers in big law firms, and what would and would not be expected to raise the concerns of an outside lawyer.  The defense

## ARGUMENT

**The Proffered Expert Opinion Testimony Of David Bronner Should Be Excluded**.

The defendant intends to elicit from Mr. Bronner a broad sweep of "expert" opinions that invade the province of the Court and the jury: Mr. Bronner would essentially deliver from the witness stand key portions of the defense summation.  On the one hand, with respect to the aspect of the fraud that Collins admits he *did* know about (but asserts was not fraudulent) – the concealment of the PPA – Mr. Bronner proposes to offer testimony as to the meaning of a contract, the EPMA, in reaching his determination that, according to relevant legal standards, the PPA need not have been disclosed by Collins to THL because, as Collins contended in his trial testimony, the PPA concerned only the distribution of sale proceeds "at the ownership level" (Def. Ex. A at 3) following the LBO.  On the other hand, with respect to the aspects of the fraud Collins claims he did *not* know about, Mr. Bronner will essentially opine that the practices of a modern corporate lawyer with a demanding practice at a large law firm necessarily shielded Collins from the red flags of Refco's fraud  – essentially opining that Collins could not have been expected to know, and did *not* consciously avoid learning, the objects of the conspiracy charged against him.  "When an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgement for the jury's." *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994) .

---

repeatedly asked that the Court defer ruling until later in the trial on the Government's motion to preclude the expert witness. (Tr. 631).  As the trial progressed, however, Judge Sand expressed skepticism that the expert would be permitted to testify.  (Tr. 1143, 2391).  After Judge Patterson assumed charge of the trial, the Court heard argument on the question.  (Tr. 3009-17).  The next day – having reviewed the entirety of the Government's case – Judge Patterson ruled that the testimony would be precluded under Rule 403 because, the Court concluded, the evidence would risk unfair prejudice, would confuse the issues, and would mislead the jury.  (Tr. 3023-24).

**A.**        **Applicable Law**

**1.**        **Rule 702**

Rule 702 of the Federal Rules of Evidence provides for expert opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue,; (b) the testimony is based on sufficient facts or date; (c) the testimony is the product of reliable principles and methods; and (d) the witness has reliably applied the principles and methods to the facts of the case.

**2.**        **Rule 704**

Rule 704(b) of the Federal Rules of Evidence states that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."

**3.**        **Rules 401-403**

Rules 401 through 403 of the Federal Rules of Evidence state that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but it may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury.  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert* v. *Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993) (internal citations omitted).

**B. Discussion**

**1.      Expert Testimony About the PPA's Materiality Is Inadmissible.**

The defendant correctly points out that the Government contends that the defendant can be

convicted solely based on his intentional non-disclosure of the PPA.  Accordingly, Collins seeks

to offer Mr. Bronner's testimony as a call for a directed verdict.  Mr. Bronner will apparently

testify that "disclosure of the PPA would not have significantly altered the mix of information

available to an investor in the same situation as [THL] and/or the bond purchasers and banks"

and therefore "[t]he PPA was not material to the LBO."  (Def. Ex. A. at 3).  This kind of

testimony as to the ultimate conclusion on a legal question has been regularly rejected by the

courts.[3]

"Expert evidence is not inadmissible merely because it 'embraces an ultimate issue to be decided

by the trier of fact.'"  *Primavera Familienstifung* v. *Askin*, 130 F. Supp. 2d 450, 528 (S.D.N.Y.

2001) (quoting Fed. R. Evid. 704(a)).  "However, an expert opinion . . . should not be admitted

where it 'would merely tell the jury what result to reach."  *Id..* at 528 (quoting Fed. R. Evid.

704(a) advisory committee's note).  As a general matter, trial courts should exclude expert

testimony that "expresses a legal conclusion."  *Hygh* v. *Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).

---

   [3]  It should be noted that, because Mr. Bronner is not a private equity investor, he is poorly
qualified in any event to offer a general opinion as to whether the PPA was material to a
purchaser in a leveraged buy-out.  Mr. Bronner's claimed area of expertise is the practice of
corporate law, which he expressly describes as excluding the exercise of business judgment.
(Def. Ex. A at 4 (setting forth Mr. Bronner view that, in the practice of corporate law, "the client
typically negotiates all economic and business terms of a transaction," at which point the
lawyer's role is only "to effectuate the client's lawful objectives")).  Accordingly, leaving aside
that expert testimony is unnecessary on this point, Mr. Bronner, himself, has disclaimed any
expertise as to what aspects of Refco's economic condition and structure would be material to a
private equity investor like THL.

Courts must be vigilant to prevent an expert from coming "dangerously close to usurping the jury's function." *United States* v. *Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987) (cautioning against providing a party "with an additional summation by having the expert interpret the evidence"). Moreover, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard – explicit or implicit — to the jury." *Hygh,* 961 F.2d at 364. "Whereas an expert may be uniquely qualified by experience to assist the trier of fact, he is not qualified to compete with the judge in the function of instructing the jury." *Id.* Accordingly, in *Marx & Co.* v. *Diners' Club, Inc.*, the Second Circuit vacated a civil judgment where a plaintiff's expert "gave his opinion as to the legal standards which he believed to be derived from the contract and which should have governed [defendants'] conduct." 550 F.2d 505, 509 (2d Cir. 1977). "The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony." *Id.* (internal quotation marks omitted).

These restrictions on legal experts have been carefully applied in securities fraud cases, both criminal and civil. *See, e.g., United States* v. *Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (holding that expert testimony in securities cases "must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying the law to the facts before it"). The questions of whether facts were material and required to be disclosed under the terms of a merger agreement are questions for the jury after proper legal instruction is given. *See Bilzerian*, 926 F.2d at 1298 ("Determination of materiality is a mixed question of law and fact that the Supreme Court has stated in especially well suited for jury determination."); *Primavera Familienstifung,*

-7-

130 F. Supp. 2d at 528-29 (excluding testimony from finance expert concerning whether

defendant securities brokers complied with their contractual obligations and conducted

themselves in a "commercially reasonable manner" because testimony sought "to supplant . . .

the role of the jury interpreting the evidence" and contained "opinions and conclusions directed

at telling the jury what decision to reach"); *Media Sport & Arts* v. *Kinney Shoe Corp.*, No. 95

Civ. 3901 (PKL), 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999) (precluding expert from

giving opinion on meaning of contract because expert testimony "may not take the place of that

of the individuals who actually negotiated the deal"); *cf. United States* v. *Dessanges*, No. S2 99

Cr. 1182 (DLC), 2000 WL 294849, at *3 (S.D.N.Y. Mar. 21, 2000) (barring expert testimony on

the materiality of misstatements in visa applications).  Thus, in *Bilzerian,* the Second Circuit

upheld the exclusion of proposed expert testimony that "related directly to the issue of whether

[the defendant's] actual [SEC Schedule] 13D disclosures complied with the legal requirements"

because "the expert testimony would have constituted an impermissible instruction on governing

law."  926 F.2d at 1285.

Collins complains that he should be permitted an expert because he was "unable to elicit

supporting testimony from any other witness" and therefore "Collins was left to carry his own

water as the sole witness to testify that the PPA did not need to be disclosed."  (Def. Mem. at 2).

That predicament does not mean that Collins may enlist a distinguished attorney to deliver the

defense summation as a witness.  Defense counsel is perfectly able to cross-examine the

Government's witnesses as to their bases for claiming that the PPA was called for by THL's due

diligence requests, was within the scope of what the EPMA represented to have been produced,

and was material to the transaction; whether their views are infected by bias; and whether

reasonable minds could disagree with whatever views they profess.  And in fact all of this was done at trial.[4]  But Collins may not mount this defense by offering an expert in the law.  "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making the decision, but rather attempts to substitute the expert's judgement for the jury's.  When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to makes its own informed determination."  *Duncan*, 42 F.2d at 101.[5]  A party is not permitted "an additional summation by having the expert interpret the evidence."  *Nersesian*, 824 F.2d at 1308.

## 2.    Expert Testimony About Transactional Lawyers' Practices Is Inadmissible.

The next body of opinions offered by Collins's proposed expert appear calculated to bolster Collins's defense that he was unaware of the fraud that his client had perpetrated on him, and to justify decisions Collins made, like concealing the PPA from his own law partners who worked

---

[4]  Collins claims that he was prevented from eliciting what he characterizes as *Brady* evidence concerning the supposed view of Government witness Thomas Sullivan, a lawyer representing BAWAG, that the PPA was not material.  (Def. Ex. B).  Sullivan's testimony on this subject was inadmissible for good reason: Sullivan was not a lawyer on the Refco-THL deal, he merely represented the Austrian bank that remained in the background during the negotiaton of the EPMA.  Accordingly, his view as to the PPA's materiality had nothing to do with any involvement in the facts of the transaction or any interaction with Collins.  In other words, the defense attempted to make Sullivan its expert witness on the PPA's materiality since he happened to have formed that view from his remote standpoint.  Importantly, Sullivan's  remoted perspective stands in contrast to the personal involvement of the lawyers the Government did call to give testimony on this point, which will be addressed in the relevant Government motion *in limine*.  *See supra* n.1.

[5]  If one side were permitted an expert like Mr. Bronner to testify on materiality, disclosure practices, or the like, it would simply compel the other side to call its own expert on the same subjects.  As the Second Circuit has observed, "[w]ith the growth of intricate securities ligation over the past forty years, we must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law."  *Marx & Co.*, 550 F.2d at 511.

with him on the THL merger.  These proposed expert opinions suffer from a variety of defects,

particularly because many of them are broad generalizations based on Mr. Bronner's personal

experience practicing law, but which are of course not drawn from Collins's actual, personal

practices.

A trial court must also find that proposed expert testimony is both relevant and reliable prior to

admitting it into evidence.  *Daubert.*, 509 U.S. at 589-90.  The fifteen opinions tendered here by

Mr. Bronner each fall afoul of one or more requirements for expert testimony.  First, under Rule

702,  "[t]he subject of an expert's testimony must be 'scientific knowledge.' . . . [T]he term

['knowledge'] 'applies to any body of known facts or to any body of ideas inferred from such

facts or accepted as truths on good grounds.'"  *Daubert,* 509 U.S. at 589-90 (quoting Webster's

Dictionary).  Second, expert testimony cannot be offered on points that are relatively obvious and

are not outside of the average juror's ken.  *See United States* v. *Mejia*, 545 F.3d 179, 194 (2d

Cir. 2008) ("Testimony is properly characterized as expert only if it concerns matters that the

average juror is not capable of understanding on his or her own."); *see also Andrews* v. *Metro N.*

*Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (collecting cases) (expert testimony is

plainly inadmissible when it merely addresses "lay matters which jury is capable of

understanding and deciding without the expert's help").  Third, expert testimony is inadmissible

when it is calculated primarily to insinuate what must have happened in this case on trial – *e.g.*,

Collins must not have learned certain facts because a partner in a large, corporate law firm has so

many open matters – and therefore attempts to substitute for fact witnesses concerning what

actually did happen.  *See United States* v. *Zafar*, 291 F. App'x 425, 427 (2d Cir. 2008).[6]

Because the opinions tendered are so varied (and the defense reserves its purported right to offer

"other opinions not listed in this notice"), we are compelled to address all fifteen of them

individually but briefly.  Each should be precluded under Rule 403 and Rule 702.

> 1.  *An outside transactional lawyer does not have general management functions or oversight of the client.*  This rather obvious point is nonetheless irrelevant as a general matter; the fact that Collins did not have general management functions of Refco will be easily established by cross-examination of the Government's witnesses, nor will they suggest otherwise.

> 2.   *An outside transactional lawyer may not be involved in all or even most of a client's transactions.*  Again, the general nature of this opinion makes it irrelevant; the question of how many of Refco's transactions Collins was actually involved in may be relevant and can be established by fact witnesses and documents.

> 3.  *An outside transactional lawyer would often have, at most, only partial knowledge of the client's business transactions, operation and financial condition over time.*  Again, the general knowledge of the average transactional lawyer is irrelevant; the Government bears the burden of proving Collins's actual knowledge of relevant transactions.

> 4.  *An outside transactional lawyer relies primarily on the client for information about the client and its business.*  This proposition does not seem to be subject to serious dispute, but it is not a proper subject for expert testimony.  The question in this case is what information Collins did receive or could have learned from his co-conspirators or other sources available to him.

> 5.  *An outside transactional lawyer does not investigate the client, unless specifically asked by the client to do so in a particular matter.*  This is not an appropriate subject for expert testimony.  To the extent this refers to an actual, formal investigation, the point is obvious and there will be no suggestion by the Government that Collins is guilty because

---

[6] In *Zafar*, the Second Circuit affirmed the district court's exclusion of the defendant's proposed expert testimony about the use of stock-selection software found on the defendant's computer in a securities fraud case.  There was no evidence that the defendant actually used that software for stock trading at the time of the charged offenses.  *Zafar*, 291 F. App'x at 427.  The Court affirmed the district court's decision, because the defense expert was not trying "to show the jury how the software worked but to insinuate what had happened with respect to the relevant stock trades, a subject on which [the expert] was not a competent witness."  *Id.*

he did not undertake such an investigation of Refco.  To the extent it suggests that transactional lawyers do not gather information from their clients about their clients' businesses, it is demonstrably wrong.  In any event, the question of what lawyers generally do has no relevance to the determination of what Collins did.  Expert testimony of this nature would just confuse the issues before the jury.

6.  *An outside transactional lawyer would assume that audited financial statements fairly represent the financial condition of a company in all material respects.*   While not on its face controversial, this point is not appropriate for expert testimony: the question of whether Collins relied on the audited financial statements in good faith, or had reason to know or believe otherwise, is a factual question.

7.  *An outside transactional lawyer would not necessarily be provided with copies of all documents executed by the client in connection with a transaction.*  Lacking any reliable, scientific basis, this is not a proper subject for expert testimony and is irrelevant as a general matter.  The Government will bear the burden of showing that Collins did receive documents that are important to the prosecution's case.

8.  *The senior partner on a deal is not expected to have detailed knowledge of all documents, communications and disclosures related to the deal and often will not review all such materials personally.*  Again, this is not an opinion grounded in facts or data.  The Government bears the burden of establishing Collins's guilty knowledge, or his conscious avoidance of guilty knowledge.  If it important to do so by demonstrating that Collins reviewed a particular item, the Government will have to do so.[7]

9.  *Individual members of a deal team may not have knowledge of all elements of the deal or all deal documents.*  Again, this is not an opinion grounded in facts or data.  It is also curious that Collins seeks to distract the jury with this and related points, given that with respect to the key deal document – the PPA – he does not dispute that he reviewed it (indeed, he wrote it) and declined to disclose it to THL.

10.  *It is not unusual for a senior attorney, at a client's request, to limit other attorneys' access to certain information about the client or transaction.*  This opinion also lacks any grounding in data or facts.  Collins presumably seeks to offer it because it is undisputed that he did not disclose the PPA to his law partners, who might well then have blocked Collins from going forward with the THL deal without disclosing the PPA.  Collins' motives for concealing the PPA from his partners is a fact question.

---

[7]  At trial, Colllins called a witness who attempted to show that Collins had not read an e-mail, and then the defendant's secretary testified that Collins frequently did not read his e-mail. The defendant is free to call such witnesses again, since at least their testimony is grounded in what Collins actually did, as opposed to what another lawyer would expect Collins to do.

11.   *A large client may have dozens of individual, on-going matters, handled by different attorneys within a firm, and involving hundreds or thousands of hours of work in a year.* This general point will be obvious to many, but its only relevance lies in whether this was true of Refco and Mayer Brown, which Collins can easily establish through business records.

12.   *A senior partner reviewing time records or bills for such a client is reviewing them from an administrative perspective, and is not ordinarily expected to understand the substance of all work reflected in those records.*  This opinion is not grounded in facts or data.  As in any instance where parties seeks to prove that an individual was or was not aware of the contents of a document that he reviewed, competing inferences may be argued and drawn based on the surrounding facts.  Mr. Bronner's personal practices in this area add nothing.

13.   *Lawyers representing different parties often interpret documents differently and have different view of the legal effect of particular language.*  This point will surely be obvious even to jurors with no personal experience involving lawyers, and it is not a subject for expert testimony.  Moreover, Collins will easily get this concession from the attorneys who testify for the Government if he so desires.

14.   *A lawyer attempts to draft documents in a way that is favorable to his or her client, and to minimize burdens on the client to close the deal.*  This is only slightly less obvious than the preceding point, and will be readily conceded by the attorneys who are fact witnesses in discussing work they actually did here.

15.   *Reference to a "Proceeds Participation Agreement" in an LLC agreement would ordinarily be understood to refer to an agreement relating to distribution of money in the event of a sale or disposition of LLC membership interests.*  The defendant apparently seeks to offer this opinion in order to argue that THL's lawyers  – whom the evidence will show may have seen the briefest reference in the course of a massive due diligence effort to something called a "Proceeds Participation Agreement" – must immediately have appreciated the significance and effect of the PPA from those three words alone, and their failure thereafter to request a copy of it shows that the PPA was not material to them.  This is not a subject for expert testimony.  The relevant proof is what the lawyers who were aware of this passing reference to a "Proceeds Participation Agreement" believed the reference might mean, which is evidence that would come from questioning those lawyers.

Since Mr. Bronner offered all of these opinions in the context of reviewing the trial transcript and

other documents from this case, it would be one very short step from his proffering general

opinions to explicitly defending Collins's actual conduct.  It is difficult to imagine that the

-13-

witness would be able to refrain from resorting to examples of applications of these general principles which are virtually identical to the facts that will be before the jury.  In these ways, the expert's opinions will be used to frame arguments about what Collins's state of mind must have been as a corporate lawyer on a large team with limited information provided only by his client whose truthfulness was presumed and with limited responsibility for much of the transaction that took place while Collins was involved in a number of other assignments.[8]  Of course, if these things are true, Collins can prove them through fact witnesses – or the Government will fail to prove the contrary with its fact witnesses.  But none of the above characterizations is worthy of the cloak of expertise.[9]

Collins's final reason to permit this expert testimony is separate from the rules of evidence governing this sort of expert.  Collin complains that, at the first trial, "numerous government witnesses were sophisticated transactional lawyers from major international firms who testified about aspects of their practice, including their prior experience independent of the LBO transaction at issue in this case.  The Government sought to promote inferences from these aspects of their testimony that would help implicate Collins in their fraud."  (Def. Mem. at 4).

---

[8] "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone."  Fed. R. Evid. 704(b); *see United States* v. *Rahman,* 189 F.3d 88, 136 (2d Cir. 1999) (rejecting expert testimony that "constituted an effort to tell the jury the defendant's intentions through the mouths of witnesses other than himself"; experts are "not competent to testify to [a defendant's] intentions and beliefs.").

[9] This kind of expert testimony on contract interpretation is also excluded because it invites time-consuming, and inappropriate battle of experts. As the Second Circuit has observed, "[w]ith the growth of intricate securities ligation over the past forty years, we must be especially careful not to allow trials before juries to become battles of paid advocates posing as experts on the respective sides concerning matters of domestic law."  *Marx & Co.*, 550 F.2d at 511.

-14-

As an example, Collins points to the Government's query of a fact witness who was a lawyer for

THL, James Westra, whether it was generally his "practice" to review flow of funds memoranda.

(Dem. Mem at 4).  However, the defense did not object to this question (Tr. 1719), probably

because on cross-examination, counsel asked some similar questions of Westra and another THL

attorney, Jay Tabor (Tr. 1501-02, 1663-65, 1753).  If the Government opens the door again at this

trial to this sort of questioning, certainly Collins should be entitled to some leeway to pose such

questions of the Government's witness or even to re-tender this expert.  But unless the

Government does open the door at trial to some kind of appropriate, limited testimony, Mr.

Bronner's opinions are inadmissible.  Nor are the rules for Mr. Bronner's testimony altered by

the Government's plan to offer lay opinion testimony by from fact witnesses, *see supra* n. 1;

rather, Collins must seek to do the same.

## <u>CONCLUSION</u>

For the reasons set forth above, the Government respectfully requests that the Court preclude the

proffered expert opinion testimony from David Bronner, Esq.

Dated:  New York, New York
        August 31, 2012

                                       Respectfully submitted,

                                       PREET BHARARA
                                       United States Attorney

                                        /s/ Harry A. Chernoff
                            By:        _____
                                       Harry A. Chernoff
                                       Michael A. Levy
                                       Edward A. Imperatore
                                       Assistant United States Attorneys
                                       (212) 637-2481/2446/2327

-15-