UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                            :

UNITED STATES OF AMERICA,         :

                                :     ECF Case

           v.                  :

                                :     S2 07 Cr. 1170 (LAP)

JOSEPH P. COLLINS,               :

                         Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANT JOSEPH COLLINS'S REPLY MEMORANDUM IN SUPPORT OF HIS**
**<u>MOTION TO PRESENT EXPERT TESTIMONY OF DAVID BRONNER AT TRIAL</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

I.    The Proffered Testimony on Disclosure Satisfies
the Rules of Evidence and Should be Admitted ................................................................ 3

II.    The Proffered Evidence of Transactional Lawyers' Practices Should be Admitted ........ 12

CONCLUSION..................................................................................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

Basic v. Levinson,
    485 U.S. 224 (1988)..............................................................................................4

Cary Oil Co. Inc. v. MG Refining & Marketing, Inc.
    2003 WL 1878246 (S.D.N.Y. April 11, 2003) ...................................................13

Fiataruolo v. United States,
    8 F.3d 930 (2d Cir. 1993)............................................................................ passim

Highland Capital Mgmt., L.P. v. Schneider,
    551 F.Supp.2d 173 (S.D.N.Y. 2008)...................................................................13

Hygh v. Jacobs,
    961 F.2d 359 (2d Cir. 1992).................................................................................9

In re Apollo Group Inc. Sec. Litig.,
    527 F. Supp. 2d 957 (D. Ariz. 2007) ...................................................................4

In re Xerox Corp. Sec. Litig.,
    3:99-CV-02374 AWT, 2009 WL 8556135 (D. Conn. Apr. 22, 2009) ...................4

In re Xerox Corp. Sec. Litig.,
    821 F. Supp. 2d 504 (D. Conn. 2010) ..................................................................4

Katt v. City of New York,
    151 F.Supp. 2d 313 (S.D.N.Y. 2001)..................................................................14

Marx & Co., Inc. v. Diner's Club Inc.,
    550 F.2d 505 (2d Cir. 1977)..................................................................2, 3, 12, 14

Matrixx Initiatives, Inc. v. Siracusano,
    __ U.S. __, 1313 S.Ct. 1309 (2011).................................................................2, 4

Media Sport and Arts v. Kinney Shoe Corp., No. 95 Civ. 1182 (DLC),
    1999 WL 947354 (S.D.N.Y. Mar. 21, 2000) ................................................12, 13

Namourry v. Tibbets,
    NO. 3:04-cv-599, 2008 WL 496066 (D. Conn. Oct. 23, 2008) ...........................13

TSC Industries, Inc. v. Northway, Inc.,
    426 U.S. 438 (1976)..............................................................................................3

United States v. Bilzerian,
    926 F.2d 1285 (2d Cir. 1991)......................................................................2, 7, 12

*United States v. Boissoneault,*
    926 F.2d 230 (2d Cir. 1991)................................................................................3, 15

*United States v. Cohen,*
    518 F.2d 727 (2d Cir. 1975)....................................................................................5

*United States v. Daly,*
    842 F.2d (2d Cir. 1988)....................................................................................13, 15

*United States v. DiDomenico,*
    985 F.2d 1159 (2d Cir. 1992)................................................................................10

*United States v. Matera,*
    489 F.3d 115 (2d Cir. 2007)..................................................................................15

*United States v. Milton,*
    555 F.2d 1198 (5th Cir.1977) ................................................................................7

*United States v. Mulder,*
    273 F.3d 91 (2d Cir. 2001)........................................................................12, 13, 15

*United States v. Rajaratnam,*
    802 F.Supp. 2d 491 (S.D.N.Y. 2011)......................................................................4

*United States v. Schliffer,*
    168 F. App'x 483 (2d Cir. 2006) .............................................................................4

*United States v. Zafar,*
    291 F. App'x 425 (2d Cir. 2008) ...........................................................................14

## OTHER AUTHORITIES

Federal Rules of Evidence 702 ..........................................................................3, 4, 14

Federal Rules of Evidence 704 ..........................................................................6, 7, 10

Federal Rules of Evidence 704(b).............................................................................10

United States Court of Appeals, Second Circuit, Local Rule 32.1.1(a).........................14

**PRELIMINARY STATEMENT**

The defendant Joseph P. Collins has moved to introduce expert testimony to aid the jury's evaluation of the factual circumstances relevant to a significant and complex issue in the case – whether the Proceeds Participation Agreement ("PPA") had to be disclosed.  In its response, the government makes clear that its witnesses will place this very matter directly in issue at trial, offering "lay opinion testimony as to the scope of the due diligence that THL requested, the meaning of the EPMA's representations . . ., and the materiality of the PPA." Govt. Br. at 2-3.  Yet in the same breath, the government would preclude Collins from putting on a case in response.  Without such testimony, the record on this issue will be entirely one-sided, and Collins will have been denied an opportunity to present his defense.

The government intends to offer the subjective opinions of witnesses from Lee and its lawyers at Weil Gotshal, that the PPA was "important" or material and should have been disclosed (testimony that it emphasized in its summations at the last trial).  These witnesses, whose opinions were developed post-hoc, lack knowledge of the full factual context surrounding the PPA's non-disclosure.  In particular, the Lee and Weil witnesses lack knowledge of the steps taken by the parties on the other side of the LBO to terminate all rights and obligations associated with the PPA, ensuring that it could have no future effect on Refco or Lee.  Collins is entitled to meet the partially-informed, subjective opinion testimony of the government's witnesses with expert testimony based on the full factual record, on both the issues of whether the PPA was material and what a lawyer without knowledge of the underlying fraud would consider in determining whether it needed to be disclosed.

The government's principal contention is that the proffered testimony is inadmissible because it would trespass on the court's duty to instruct the jury on the law, and on the jury's duty to decide ultimate issues of fact.  Govt. Br. 6-9.  These fears are unjustified.  Bronner will in

no way opine on or instruct the jury on the law, nor will he offer an opinion on the ultimate question of whether Collins's decision not to disclose the PPA was the result of a good faith legal judgment or of his participation in a scheme to defraud.  It is well settled that expert opinion on mixed questions of fact and law, such as materiality, is admissible where, as here, it is grounded in the expert's factual analysis of evidence and does not stray beyond it.  *See Fiataruolo v. United States*, 8 F.3d 930, 941-42 (2d Cir. 1993) (expert's "testimony gave the jury helpful information beyond a simple statement on how its verdict should read" and was "couched specifically in the evidence he reviewed").  Bronner's proffered testimony easily meets that standard.  Given the technical complexity of the issues surrounding the non-disclosure of the PPA, and the Supreme Court's recognition of the factually intensive nature of the materiality inquiry, *see Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. __, 1313 S.Ct. 1309, 1318, 1321 (2011) (inquiry into materiality is "inherently fact-specific" and "contextual"), it can only be helpful to the jury to hear an expert's analysis of the full factual context in which disclosure of the PPA must be evaluated.

The Second Circuit has recognized that the expert testimony of legal practitioners is admissible, particularly to help clarify issues in the context of complex securities transactions, so long as the expert does not opine impermissibly on the law or intrude on the province of the court.  *See United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities industry, expert testimony may help a jury understand unfamiliar terms and concepts"); *Marx & Co., Inc. v. Diner's Club Inc.*, 550 F.2d 505, 509 (2d Cir. 1977) (lawyer's testimony concerning "the practices of lawyers and others engaged in the securities business" is admissible).  Collins should not be denied the use of an expert in his defense merely because this case involves a lawyer's practice of law.

The government further seeks to preclude the defense from introducing background testimony on the ordinary customs and practices of transactional lawyers.  It is well established that expert testimony on the ordinary range of practices in a particular industry is admissible to "enable the jury to evaluate the conduct of the parties against the standard of ordinary practice in [that] industry." *Marx*, 550 F.2d at 509-10.  Indeed, equivalent testimony is routinely proffered and received for this purpose by the government in criminal cases.  *See, e.g., United States v. Boissoneault*, 926 F.2d 230, 232-33 (2d Cir. 1991) (collecting numerous cases endorsing use of expert testimony to explain methods and practices of drug trafficking organizations, and to show action in conformity with those practices).  The defense is entitled to show the jury how specific aspects of the practice of transactional law are generally handled, so that the jury, unfamiliar with the day-to-day practices of this complex business, can meaningfully evaluate Collins's particular actions.  Moreover, such testimony is necessary to rebut specific inferences that the government seeks to promote, including by having its own witnesses testify concerning these same areas of practice.  Under well-settled precedents Bronner's testimony is admissible background to provide the jury with the factual context against which it can evaluate the inferences that may be drawn from Collins's conduct.

I.     **The Proffered Testimony on Disclosure Satisfies the Rules of Evidence and Should be Admitted**

The touchstone of admissibility under FRE 702 is whether expert testimony will "help the trier of fact to understand the evidence or to determine a fact in issue."  FRE 702.  The issue of disclosure of the PPA is at the heart of this case, and one of Collins principal defenses is whether a reasonable lawyer could disagree about its materiality.  The inquiry into materiality is objective – it asks what information would be significant to the "reasonable investor" in making a decision to invest.  *See TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976);

*Basic v. Levinson*, 485 U.S. 224, 231-32 (1988).  The Supreme Court has recognized that this question is inherently fact intensive and "contextual" and that there are no bright line legal rules for determining whether a particular item is material.  *See Matrixx Initiatives, Inc. v. Siracusano*, __ U.S. __, 1313 S.Ct. 1309, 1318, 1321 (2011).

Given the absence of any bright line rules on materiality, and the varied and highly complex commercial contexts in which juries have been asked to evaluate the issue, it is not surprising that courts regularly admit expert testimony in this area.  Thus, courts have entertained expert testimony on the materiality of information concerning such diverse matters as the background of corporate principals, *see United States v. Schliffer*, 168 F. App'x 483, 485 (2d Cir. 2006) (government's "expert witness testified that information on Schlisser's background would have been considered material to investors"), the effect of corporate restructuring on a business, *see In re Xerox Corp. Sec. Litig.*, 821 F. Supp. 2d 504, 510 (D. Conn. 2010) (Prof. Denis's report, and specifically his analysis of comparable restructurings, speaks to the materiality of the alleged misstatements" and "in addition, will provide the jury with background and context about an area with which jurors are not usually familiar, *i.e.*, operational restructurings"), and the business risks raised by the implementation of a new compensation structure. *See In re Apollo Group Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 964 (D. Ariz. 2007). *See also In re Xerox Corp. Sec. Litig.*, 3:99-CV-02374 AWT, 2009 WL 8556135 (D. Conn. Apr. 22, 2009) (expert testimony permitted on whether information had been previously disclosed to the market).  It is, of course, standard for experts to offer analysis of the market impact of information as it relates to materiality. *See, e.g., United States v. Rajaratnam*, 802 F.Supp. 2d 491, 512-513 (S.D.N.Y. 2011); *see also* FRE 702 Advisory Committee Notes, 2000 Amendment (listing testimony on "how markets respond to corporate reports" as typifying proper expert evidence).  And the Second Circuit has also

permitted expert discussion of the "reach of the concept[ ] . . . of materiality," in response to opinions on "similar issues of 'ultimate fact'." *United States v. Cohen*, 518 F.2d 727, 737 (2d Cir. 1975).

Here, the proffered testimony would be no less helpful to the jury. This case principally concerns a complex leveraged buyout and related corporate transactions. To ask a jury to meaningfully digest and assess the facts without the aid of an expert is to ask them to undertake an impossible task. The ostensible materiality of the PPA depends on the importance to a reasonable investor of (a) specific contractual rights and obligations among Refco and its owners, and (b) the steps taken by parties to the PPA to restructure those rights and obligations and terminate the PPA in connection with the merger. Understanding those facts and evaluating their potential importance to a reasonable investor or to a lawyer making a disclosure decision is far beyond the knowledge and abilities of the ordinary lay jury.

To give only one example, government witnesses have maintained that Collins should have disclosed to them that the PPA gave Refco's minority owner, BAWAG, a right to convert contractual interests under the PPA into equity in Refco (a right that was, however, never exercised and was terminated before the LBO closed). A lay jury has no basis for deciding how a reasonable investor's judgment would likely be affected by knowledge that a minority owner had such a right, or by additional knowledge that the owner was participating in the sale of the company without exercising that right, and was a party to agreements by which all such rights were terminated. Just as Collins would be entitled to present expert evidence of the materiality of a corporate restructuring, or of particular categories of business risk, or of disclosures concerning the background of a company's principals, he is entitled to have an expert testify

about how these transactions fit into the LBO, and what their significance would be to a reasonable investor or a lawyer making a disclosure decision.

Notably, none of the cases the government cites deals with the exclusion of expert testimony on materiality under the securities laws or lawyers' decision-making in securities transactions, or involves a criminal charge against a lawyer on which the principal evidence of criminal intent is a counter-party's interpretations of contractual arrangements. *See* Govt. Br. at 6-8.

The government asks that the Court preclude Bronner's testimony in its entirety, on the ground that he would be testifying "to the ultimate conclusion on a legal question" and/or "'communicating a legal standard – explicit or implicit – to the jury,'" thereby trespassing on the court's role to instruct the jury on the law. Govt. Br. at 6-7. To the contrary, Bronner's testimony need not and will not run afoul of any such restrictions. In arguing otherwise, the government mischaracterizes and ignores the substance of the defense's proffer.

As the government concedes, testimony is not objectionable merely "because it embraces an ultimate issue to be decided by the trier of fact." *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993) (quoting FRE 704), *see* Govt. Br. at 6. "Experts may testify on questions of fact as well as mixed questions of fact and law." *Id.* The Advisory Committee notes to FRE 704 make clear that the court's role is not to exclude all expert reference to relevant legal standards, but to guard against conclusory statements of opinion that could be of no meaningful practical help to the jury. The notes explain that the rules of evidence

> [s]tand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, 'Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed."

FRE Rule 704, Advisory Committee Notes to 1972 Proposed Rules; *see Fiataruolo*, 8 F.3d at 941-942 (noting Second Circuit's reliance on the quoted Committee note).

Accordingly, in *Fiataruolo*, a tax penalty refund case, the district court permitted, and the Second Circuit Court of Appeals upheld the admission of testimony from an expert for the plaintiff taxpayer who opined as to why the taxpayer was not a "responsible person" pursuant to a provision of the Internal Revenue Code. 8 F.3d at 942. The *Fiataruolo* court explained that, viewed in its proper context, this testimony "was not a simple bald assertion of the law and was not designed to invade the province of the trial court," and was admissible. *Id.* The expert had given an explanation of facts pertinent to the legal issue, and only then offered his account of why the taxpayer did not qualify as a "responsible person," thus enabling the jury to evaluate the expert opinion for itself. *Id.* (expert's "testimony gave the jury helpful information beyond a simple statement on how its verdict should read" and was "couched specifically in the evidence he reviewed") *citing Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1459 (10th Cir.1987) (finding admissible testimony of expert who "explained the bases for his opinions in sufficient detail to permit the jury to independently evaluate his conclusions"); *United States v. Milton,* 555 F.2d 1198, 1204 (5th Cir.1977) (finding admissible similar testimony that combined factual explanations and legal conclusions).

Fiataruolo makes unequivocally clear that expert testimony on legal issues is admissible when supported by factual analysis and when subject, as necessary, to cautionary jury instructions from the court. *See Fiataruolo*, 8 F.3d at 942 (cautionary instruction "adequately protected against the jury's giving undue weight to [expert's] opinion"); *see also United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (approving of trial judge's "limiting instruction indicating that the expert's testimony was simply background information").

Bronner's proffered testimony fits squarely under *Fiataruolo* and similar cases.  The government's brief fastens on one of Bronner's ultimate conclusions – that the PPA was not material – complaining that is inadmissible.  *See* Govt. Br. at 6.  But the government entirely ignores that the proffer grounds Bronner's conclusions with respect to materiality and disclosure in factual analysis and factual criteria that are critical to their admissibility under *Fiataruolo*.  *See* Exhibit A to Collins's Memorandum of Law in Support of Motion to Permit Expert Testimony at 2-4.  As set forth in the proffer, Bronner will provide background information on legal due diligence and disclosure that will aid the jury to understand the context in which disclosure decisions were made in the case.[1]  Bronner will help the jury to break down and comprehend the various moving parts of multiple simultaneous transactions that bear on the question of the PPA's disclosure.  He will explain criteria that are typically considered in determining whether a particular item must be disclosed including whether it reflects negative information, or would have effects on the investment going forward.  Only then will he explain how the facts and circumstances support his ultimate opinions on disclosure.  Bronner's factual analysis is not only independently admissible, it renders his ultimate conclusions admissible by providing the jury with the basis for an evaluation of his opinions.

Bronner's testimony is not offered to provide the jury with a legal standard, but to aid the jury in its evaluation of the relevant facts.  To the extent that any question of law or legal standards may arise in relation to Bronner's testimony, the Court will be able to instruct the jury appropriately.  *See Fiataruolo*, 8 F.3d at 942.  There is no reason to exclude Bronner's testimony

---

[1]  Such testimony on the normal practices of lawyers assisting in due diligence  is independently admissible for the reasons set out in section II, below.

peremptorily and entirely, as the government seeks to do, when the Court is well able to police the testimony while it is in progress.[2]

Nor, contrary to the government's characterization in its brief, will Bronner's testimony be offered as evidence of what the provisions of the LBO merger and acquisition agreement (the "EPMA") actually mean, and the court may so instruct the jury. *See* Govt. Br. at 4. To the extent he offers testimony concerning contractual provisions, it will be for the sole purpose of explaining to the jury how an investor or lawyer might reasonably view them in a decision-making process. Whether he is right or wrong about their meaning is irrelevant. At the first trial, based on the contractual interpretations of its lawyer witnesses, the government contended that Collins was guilty precisely because the disclosure of the PPA was not an issue on which "reasonably minded people could differ." (Tr. 5004). That statement alone is ample justification for the admission of Bronner's testimony. In any event, the defense is entitled to have an expert in the field discuss facts that could lead a lawyer to take the contrary view from the government's witnesses on disclosure, including facts unknown to them that bear on materiality, the client's wishes and stated business reasons for non-disclosure, and whether non-disclosure can be reconciled with the client's contractual obligations to a buyer. *See* Exhibit A to Collins's Memorandum of Law in Support of Motion to Permit Expert Testimony at 3. Collins should not

---

[2] Likewise, although the defense believes that, under *Fiataruolo*, it is entitled to introduce Bronner's ultimate opinions on disclosure, the Court has options for limiting the scope of Bronner's testimony and the form in which it is delivered, including the variant formulations of his opinions and their bases that are set out in the defense's proffer. The concerns that the government has expressed in its brief provide no basis for the categorical exclusion of Bronner's testimony on the subject. *See Hygh v. Jacobs*, 961 F.2d 359, 365 (2d Cir. 1992) (admission of expert opinion that use of force was unjustified was harmless error where opinion "was expressed within a larger body of otherwise unobjectionable testimony concerning police procedures involving violent arrestees from which the jury could easily have drawn the same conclusions that [the expert] did").

be precluded from providing objective context for his decision-making process merely because he is a lawyer whose world is the world of legal language.

The government also asserts that Bronner's testimony is improper because it "aims to answer for the jury the critical question of Collins's criminal intent." Govt. Br. at 3. That is simply incorrect. To the extent Bronner will testify on disclosure decisions, his testimony will merely provide context in which to evaluate Collins's intent. While his testimony may be relevant to intent, it will not purport to answer the ultimate question. Whether Collins's non-disclosure of the PPA was intended to further a fraud or was in the good faith belief that disclosure was not required remains uniquely in the province of the jury and will not be the subject of expert testimony.[3] To the extent Bronner is permitted to opine on materiality, that element is, of course, entirely distinct from the element of intent.

The government contends that, in lieu of expert testimony, Collins should make do with the cross-examination of government witnesses "as to their bases for claiming that the PPA . . . was material to the transaction," and "whether reasonable minds could disagree with whatever views [those witnesses] profess." Govt. Br. at 8-9. Standing as they did on the Lee side of the transaction, the government witnesses have no knowledge of the simultaneous transactions that

---

[3] The government's argument appears to be alluding to FRE 704(b), from which it quotes in its discussion of "applicable law." Rule 704 abolishes the prohibition against expert testimony on an "ultimate issue," but with the proviso that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." FRE 704(b). To the extent the government seeks to rely on rule 704(b) here, its reliance is misplaced. The quoted language states a prohibition on opinion testimony as to that *ultimate* issue of *mens rea* only, and not at all on the admissibility of evidence that could support an inference as to the defendant's mental state. *See United States v. DiDomenico*, 985 F.2d 1159, 1164-65 (2d Cir. 1992) ("Clearly, Rule 704(b) does not prohibit all expert testimony that gives rise to an inference concerning a defendant's mental state") *citing United States v. Richard*, 969 F.2d 849, 854-55 (10th Cir. 1992) ("The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state.").

terminated the PPA and that, in Bronner's opinion, would have caused "reasonable minds'" [to] disagree" with the witnesses views. They simply do not know the relevant facts.[4]  Collins has the right to present an affirmative case by calling witnesses in his defense, including expert witnesses.  Cross-examination as to the biases of government witnesses, while important, is no substitute for the right to present a defense through an expert's analysis of the non-disclosure of the PPA.

Finally, the government's characterizations of Bronner's testimony as "an additional summation," and an "attempt[] to substitute the expert's judgment for the jury's" are empty rhetoric, without any connection to the defense's proffer.  Govt. Br. at 8-9.  Bronner's testimony and analysis deals in facts and relevant factual criteria.  The government is fully entitled to cross-examine Bronner and to expose any flaws in his analysis.  The government intends to offer lay opinions on the non-disclosure of the PPA.  And the defense is entitled to counter those opinions not just with argument, but with evidence of an expert in the field that explains for the jury the full factual context in which Collins' disclosure decisions must be evaluated.[5]

---

[4]  The government continues to object to cross-examination of the only witnesses who were, in fact, knowledgeable about termination of the PPA and the relevance of those facts to its non-disclosure. *See* Govt. Br. at 9 n.4.  The government maintains that John Sullivan's opinion that the PPA was not material to the LBO is inadmissible because Sullivan was "not a lawyer on the Refco-THL deal" and "his view as to the PPA's materiality had nothing to do with any involvement in the facts of the transaction or any interaction with Collins."  To the contrary, Sullivan's client was a signatory to the EPMA, without whom the LBO could not have been completed, and was the largest recipient of proceeds from the LBO.  Moreover, he dealt extensively with Collins on the issue of the PPA.  Sullivan himself was fully cognizant of the PPA transaction and the issues surrounding its non-disclosure, which he described as presenting both "business and legal risks," of the terms of the EPMA, and of the restructuring and termination of the PPA.  Given that knowledge, he was far better positioned than Lee or its lawyers to form a meaningful opinion about the materiality of the PPA to the LBO.

[5]  Bronner, contrary to the footnoted suggestion in the Government's brief, is also eminently qualified to testify on these matters.  The government suggests that Bronner is "poorly qualified" to discuss materiality in the LBO because he is "not a private equity investor."  Govt. Br. at 6 n.3.  There is no such requirement on qualification as an expert.  Experts routinely testify on the

## II.     The Proffered Evidence of Transactional Lawyers' Practices Should be Admitted

The government also seeks to preclude testimony from Bronner concerning general

practices of transactional lawyers.  This testimony is admissible under well-established

precedents, including cases that the government itself cites in its brief.  *See Bilzerian*, 926 F.2d at

1294; *Marx*, 550 F.2d at 509-10; *Media Sport and Arts v. Kinney Shoe Corp.,* No. 95 Civ. 1182

(DLC), 1999 WL 947354, at *1 (S.D.N.Y. Mar. 21, 2000).  The case for its admission is all the

more compelling here where the government has sought to prove that Collins had guilty

knowledge from such routine matters as his review of client billing statements, or his role as

senior partner on the team handling a large deal.

It is well settled that expert testimony is admissible to establish ordinary practice and

procedure within an industry, so that the jury may evaluate conduct against those ordinary

practices.  *See United States v. Mulder*, 273 F.3d 91, 102 (2d Cir. 2001) (admitting expert

background testimony on construction industry labor organization as evidence relevant to intent);

*Bilzerian*, 926 F.2d at 1294 ("[T]estimony concerning the ordinary practices in the securities

industry may be received to enable the jury to evaluate a defendant's conduct against the

standards of accepted practice"); *Marx*, 550 F.2d at 509-10 ("Testimony concerning the ordinary

practices of those engaged in the securities business is admissible under the same theory as

testimony concerning the ordinary practices of physicians or concerning other trade customs: to

---

basis of their academic study of an industry, or their provision of professional services to a
particular industry.  In the course of a distinguished 38-year career as an M&A lawyer Bronner
has advised dozens of clients with respect to their disclosure obligations in M&A transactions,
and is thus ideally positioned to testify concerning what a reasonable investor would want and
need to know in considering whether to make a particular investment.  And there is no one better
suited to testifying about factors relevant to a lawyer in making a disclosure determination.  His
proffered opinion that it is the client, rather than its attorneys, that typically negotiates business
terms of a business transaction has no bearing at all on his competence to evaluate the materiality
of a disclosure decision.  *See id.*

enable the jury to evaluate the conduct of the parties against the standard of ordinary practice in the industry"); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F.Supp.2d 173, 181 (S.D.N.Y. 2008) (admitting expert testimony concerning customs and practices of brokerage industry as "helpful in allowing the trier of fact to better understand the evidence"); *Cary Oil Co. Inc. v. MG Refining & Marketing, Inc.*, 2003 WL 1878246 at *4 (S.D.N.Y. April 11, 2003) (admitting expert testimony on the regulation of derivative contracts by the CFTC to help the jury understand the "complex issues inherent in the formation" of the contracts at issue in the case). Courts within the Circuit have applied the same reasoning to admit "testimony concerning the ordinary practices of lawyers and others engaged in a particular business . . . to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *Media Sport & Arts*, 1999 WL 946354, at *1; *Namourry v. Tibbets*, NO. 3:04-cv-599, 2008 WL 496066, at *5 (D. Conn. Oct. 23, 2008) (admitting expert testimony on practice of real estate law in negligence case).

Expert testimony also properly encompasses customs and practices that relate to the relationship and interaction between lawyer and client. Such testimony can provide important background and context to the jury about an area that is unfamiliar to them. *See, e.g., United States v. Daly*, 842 F.2d at 1380, 1388 (2d Cir. 1988) (expert testimony admitted for the purpose of "provid[ing] background for the events alleged in the indictment"); *Mulder*, 273 F3d at 102 (affirming use of expert testimony to provide contextual background).

The government objects that the proffered testimony is not "scientific knowledge," and that it concerns matters that are not "outside the ken of the average juror." Govt. Br. at 10. As the government is well aware, and as the above-cited cases exemplify, expert testimony is routinely admitted – and is routinely proffered by the government – on matters that are not

"scientific." Rule 702 permits the admission of "scientific, technical, *or other specialized knowledge*" in order to "help the trier to fact to understand the evidence or to determine a fact in issue." Evidence of customs and practices derived from experience in the practice of transactional law, like similar evidence of customs and practices in the securities industry, are such specialized knowledge. *See, e.g., Marx & Co.*, 550 F.2d at 508-09 (permitting expert testimony by attorney as to standards and ordinary practices in the preparation of registration statements based on the attorney's past experience in preparing and filing such statements); *Katt v. City of New York*, 151 F.Supp. 2d 313, 356-57 (S.D.N.Y. 2001) ("[T]hat an expert's opinion is not based on statistical studies does not render that opinion inadmissible").

There should be no question that the practices of a senior lawyer in a major corporate law practice are far beyond the knowledge of an ordinary lay jury. The average juror cannot be expected to have the vaguest experience with or understanding of the role of outside legal counsel to a large and sophisticated business entity, or of the responsibilities and practices of a senior law firm partner like Collins. If anything, jurors' common-place personal interactions with the legal profession – such as buying a house, creating a will or getting a divorce – are likely to provide them with a misleading sense of the role that outside transactional lawyers typically play in complex business transactions for sophisticated clients.

The government argues, relying on *United States v. Zafar*, 291 F. App'x 425, 427 (2d Cir. 2008) that expert testimony is inadmissible if it "is calculated primarily to insinuate what must have happened in the case on trial." Govt. Br. at 9. *Zafar* is an unpublished summary order and as such, without any precedential effect. 2d Cir. Local Rule 32.1.1(a). It is also factually inapposite. *Zafar* did not involve evidence of ordinary industry practice or custom. It dealt with the exclusion of testimony relating to the operation of stock-trading software, where there was no

evidence that the defendant had actually used the software.  Here, the proffered testimony relates directly to Collins's practices as a lawyer, to the extent government has put them at issue, and to specific evidence and inferences on which the government has relied to argue that Collins committed fraud.  It is admissible for the precise reason set forth in the case law:  to provide the jury with an understanding of ordinary practice in the industry, against which it can evaluate Collins's conduct.

The government ignores that self-evident distinction.  It asserts broadly that Bronner's testimony should be precluded because what Collins knew or intended is a question of "fact" and, therefore, not a proper subject for the testimony of an expert.  The cases teach, to the contrary, that the defense is entitled to educate the jury about the factual context against which it will be asked to draw inferences concerning knowledge and intent.  The government does precisely that in many criminal cases where it presents expert testimony to provide background context for specific facts that it intends to elicit.  *See e.g. United States v. Matera*, 489 F.3d 115, 121-22 (2d Cir. 2007) (admitting expert testimony on the composition and structure of organized crime families to help the jury understand how such organizations operate); *Mulder*, 273 F.3d at 101-02 (admitting expert background testimony on construction industry labor organization as evidence relevant to intent); *United States v. Boissoneault*, 926 F.2d 230, 232-33 (2d Cir. 1991) (collecting numerous cases endorsing use of expert testimony to explain methods and practices of drug trafficking organizations, and to show action in conformity with those practices); *United States v. Daly*, 842 F.2d 1380, 1388-89 (2d Cir. 1988) (admitting background expert testimony on the operation of criminal organization to help "furnish an explanation of understanding or intent with which certain acts were performed").

Without such context, what may be ordinary and innocuous, though unfamiliar to a lay jury, is likely to take on an aura of inherent significance or suspicion that would be unwarranted. For example:

- The government has implied that, as Refco's outside counsel, Collins would necessarily have had inside knowledge of Refco's massive accounting fraud, and of transactions implicated in the fraud. In its summation at the first trial it mocked Collins's testimony that he lacked knowledge of the fraud, referring to Collins "as a workhorse who was paid $615 an hour to focus on details." (T. 4823). Government witnesses also testified at the first trial that they believed Collins to have detailed knowledge about Refco, based merely on his long-standing relationship with the company. Bronner would provide needed context, by explaining that, in ordinary practice, an outside lawyer servicing a large corporate client is just that – an outsider to the company who handles work on as needed basis, is not privy to the details of its operations and financial condition, and is reliant on the client for what information he does receive about the business.

- The government has argued, without any proof that he did so, that Collins would have pieced together purported discrepancies between certain deal documents he handled, and historical financial statements of Refco, that would have led him to question the accuracy of Refco's financial statements and uncover evidence of Refco's fraud. Bronner would explain that, in ordinary practice, to the extent that a lawyer may review a client's audited financial statements, he or she does not set out to analyze them or question their veracity, but rather assumes that they fairly and accurately represent the financial condition of the company. That issue is critical to inferences that the jury may draw about Collins's knowledge of the fraud committed by Refco insiders.

- The government has argued that Collins would have received and reviewed a "flow of funds" memorandum in the Lee LBO, which the government believes to be incriminating, even though evidence showed that it had not been sent to him. At the first trial, the government also introduced evidence from the senior Weil Gotshal lawyer on the LBO deal, that it was his practice always to review such memoranda. Bronner would aid the defense in rebutting such inferences and evidence with testimony explaining that, in ordinary practice, a senior lawyer on a large transaction may well not personally review all such documents.

- The government portrays as inherently suspicious the fact that, in 2004, Collins did not openly share information about the PPA with partners working on the Lee LBO. Bronner would explain that, in ordinary practice, it is not unusual, and so not inherently suspicious, for a client to instruct that access to certain information should be limited. He would also explain that, given the division of labor in a large law firm, it is not unusual for attorneys to be assigned to work only on discreet pieces of a large and complex deal.

- The government contends that Collins would have known and recalled details of certain transactions that other lawyers at his firm were handling for Refco merely through his review of billing statements that recorded their time. Collins is entitled to expert testimony explaining that, as a matter of ordinary practice, a billing partner would not review bills for that purpose or at that level of detail, and that a law firm or client would not expect such review.

- The government may seek to imply that, as Refco's outside counsel, Collins would have had copies of certain executed documents in his files and that their absence is suspicious. Bronner would explain that it does not follow as a matter of ordinary practice that a law firm would hold copies of every deal document executed by a client in the course of deal.

The law does not require that the jury weigh the government's proof about Collins's conduct in a contextual vacuum. And Collins, should he choose to testify or should the government offer his prior testimony, is entitled to have the jury hear his testimony against a background of what would be ordinary and customary for an attorney in his position. What Collins knew or did must be established as a matter of fact. But it should be established without the benefit of an appeal to misplaced background beliefs or expectations about the ordinary role and conduct of a transactional lawyer.[6]

---

[6] The government's brief has not specifically addressed similar background testimony dealing with the conduct of legal due diligence in a merger and acquisition transaction. *See* Exhibit A to Collins's Memorandum of Law in Support of Motion to Introduce Expert Testimony, at 3-4. That evidence is admissible for all the reasons set forth here, and in Point I.

## CONCLUSION

For the reasons stated here, and in Collins's opening brief, the Court should permit the defense to introduce Bronner's proffered testimony on the materiality of the PPA and on the practices of transactional lawyers.

Dated: New York, New York
   September 11, 2012

           Respectfully Submitted,

           COOLEY LLP

           By:   _/s/William J. Schwartz_
             William J. Schwartz (WJS 8462)
             Jonathan Bach (JPB 9710)

           1114 Avenue of the Americas
           New York, NY 10036
           Phone: (212) 479-6000
           Fax: (212) 479-6275

           *Attorneys for Defendant Joseph P. Collins*