UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA,                :
                                         :   S2 07 Cr. 1170 (LAP)
        vs.                              :
                                         :
JOSEPH P. COLLINS,                       :
                                         :
                        Defendant.       :
---------------------------------------- X


# DEFENDANT JOSEPH COLLINS'S OPPOSITION TO
# THE GOVERNMENT'S MOTION TO ADMIT LAY OPINION TESTIMONY

William J. Schwartz
Jonathan Bach
COOLEY LLP
1114 Avenue of the Americas
New York, New York  10036
*Attorneys for Defendant Joseph P. Collins*

The government seeks to introduce opinion testimony from witnesses whom, it claims, formed their opinions on the basis of conversations with Joseph Collins. The government argues that such opinions are relevant because they provide insight into Collins's state of mind. As summarized in the government's brief, "the Government's witnesses had first-hand discussions with the defendant about the EPMA and the due diligence. As a result their testimony is highly probative of the defendant's state of mind." Govt. Br. at 7.

This argument cannot withstand scrutiny, especially in light of the testimony at the first trial:

- George Stephanakis did not testify to a single conversation with Collins, yet the government seeks to introduce his opinion that the PPA was "required" to be disclosed as a proxy for Collins's state of mind. (Tr. 3060-63).

- Robert Trosten did not testify to a single conversation with Collins about the provisions of the Equity Purchase and Merger Agreement ("EPMA"). Indeed, he admitted that he had no conversation with Collins about his opinion with respect to the EPMA. (Tr. 636-37, 864). Yet the government seeks to introduce his interpretation of certain provisions of the EPMA and his opinion that they were violated by non-disclosure of the PPA. (Tr. 490-91, 540-570).[1]

- Although Jay Tabor and James Westra testified that they had conversations with Collins at various points in the LBO transaction, neither testified to the content of even a single conversation with Collins about the representations and warranties in the EPMA. Yet the government seeks to introduce their opinion that the language of the representations and warranties required disclosure of the PPA as a proxy for Collins's state of mind. (Tr. 1343-60, 1383-96, 1400-1404, 1626, 1672-74, 1678-80, 1686-96, 1702-04).

- Scott Schoen testified about conversations at which Collins was present in connection with drafting a preliminary "Letter of Intent," but did not testify to the content of even a single conversation with Collins concerning the EPMA. Yet the government seeks to introduce his opinion that the EPMA called for disclosure of the PPA as a proxy for Collins's state of mind. (Tr. 998-1002, 1004-15).

---

[1] Trosten testified to working on a draft agreement with Collins before TH Lee had emerged as a potential buyer. (Tr. 493-96). That agreement is not the EPMA, the first draft of which was prepared by Weil Gotshal.

Thus, even if one were to accept the proposition that lay opinion testimony is admissible where derived from a conversation with the defendant, the key factual predicate the government claims for admissibility – a recollected conversation with the defendant about the subject matter of the opinion – is missing here.

This gap is especially apparent with respect to the opinion testimony the government seeks to offer with respect to the meaning, or best interpretation of, specific representations and warranties included in the EPMA. Not one government witness testified about the content of a single conversation with the defendant about the meaning of such terms, and, in any event, as we further explain below, such terms are specialized terms and thus beyond the appropriate scope of "lay" opinion testimony. The opinions of the government's lawyer witnesses about these standard legal terms come from years of experience in their specialized field, not from anything Collins said – it is expert testimony in the guise of "lay" opinion.

Judge Sand ruled that such testimony was admissible in the first trial, but only after the government assured him that "[n]one of these witnesses will be asked what they believe the EPMA required based on anything other than their involvement in negotiating and drafting it with the defendant. Rather, these witnesses would testify about their understanding – *based on their dealings with the defendant and their participation in negotiating and/or drafting the EPMA*." (Govt. Let. May 8, 2009) (emphasis provided by the government).[2] Because this

---

[2]  It became clear, once the witnesses testified, that they were offering opinions based solely on their expertise, untethered to any specific conversations with Collins or to anything in particular about the LBO transaction at issue in this case. For example, Jay Tabor, a government witness and a partner at the Weil Gotshal firm, testified that related-party contracts are "always" material and that they are "material no matter what." (Tr. 1258). This testimony was categorical and absolute, in no way dependent on his actual experience or particular perceptions in negotiating this particular LBO. James Westra, a government witness and Tabor's senior partner, was permitted to testify that "[w]henever proceeds are going to be shared, other than in proportion to ownership of a company, one

promise was not kept or borne out in actual testimony, and not one of the government's witnesses related the content of a single conversation with Collins about the meaning of the EPMA's representations and warranties, it became the first ground we asserted in challenging Collins's prior conviction on appeal. We argued it was unfair for these lawyers to offer their opinions about the meaning of contractual provisions as if any other sophisticated lawyer, including Collins, would necessarily share them, especially when they were not based on any specific conversation with Collins. The Court of Appeals, which granted a new trial on a separate ground, did not reach the issue.

To be clear, we have no objection to having the government's witnesses testify about any conversations they had with Collins. Insofar as the government's witnesses had conversations with Collins about aspects of due diligence or about provisions of the EPMA, we do not object to having their witnesses share their recollection of those conversations. Government witness Jason Berger, for example, a partner at the McDermott Will firm, testified to an alleged conversation with Collins, which, in his account, included discussion of representations and warranties in the EPMA. We have no objection to having Berger testify as to his recollection of this alleged conversation, including his alleged statement, in Collins's presence, that in his view the PPA should be disclosed. Similarly, government witness Jay Tabor, a partner at the Weil Gotshal firm, testified about an alleged March 2004 conversation with Collins concerning an item of due diligence, which, he claims, should have prompted disclosure of the PPA. We have no objection to having Tabor testify as to his recollection of this alleged conversation.

---

wants to know why." (Tr. 1685). This testimony amounted to a general proposition about what he deemed to be material, gleaned from his substantial experience as a lawyer and not from his participation in any negotiation particular to the LBO at issue in this case.

3

The Court should draw the line, however, where a government witness is asked to opine on the meaning and significance of contractual terms, particularly absent any specific recollection of a relevant conversation with Collins. This is especially so where, as here, such opinions are being offered as "highly probative" of Collins's own "state of mind." Govt. Br. 7. One person's state of mind is not relevant to establish another person's state of mind, particularly where neither recalls a specific conversation in which their respective views were shared.[3]

The government's argument, at best, reduces to this: the government's witnesses were lawyers who worked on transactions and exchanged deal documents with Collins, and thus their interpretation of the meaning of terms and provisions in those documents, even absent a relevant conversation with Collins, is relevant to establish how Collins himself must have interpreted the same terms and provisions. The supposition underlying this argument – that all lawyers working on the same documents interpret them the same way – cannot seriously be maintained. It is a commonplace that lawyers representing different clients with different interests often interpret documents in different ways. Many garden-variety breach of contract cases arise because the parties have different understandings of what certain terms mean. The potential for varying interpretation is even greater in the context of a complex LBO transaction involving numerous intricate terms. Indeed, it is unfairly prejudicial to admit opinion testimony of the government's lawyer witnesses precisely for this reason: it wrongly suggests to the jury that other lawyers,

---

[3] At the first trial, the government objected and successfully precluded us from introducing evidence about John Sullivan's and Jason Berger's state of mind. (Tr. 1960-63; Tr. 2083-84). Sullivan and Berger, both government witnesses who had represented BAWAG in connection with the LBO and related transactions, ultimately concluded that they could represent their client and move forward with the transaction even while knowing that the PPA was not being disclosed. Indeed, Sullivan had advised the government in a pretrial interview that in his view the PPA was not material to the LBO. (Ex. A (Brady disclosure)).

4

including Collins, interpreted – or should have interpreted – the same provisions in the same way.

It is important to understand exactly what the government will seek to elicit in terms of opinion testimony, if its motion is granted: (1) the government will first seek to elicit from multiple witnesses their opinion with respect to the interpretation of certain representations and warranties in the EPMA; (2) the government will next seek to elicit from the same witnesses their opinion about whether the PPA can be interpreted as a document that falls within their understanding of the meaning of the same representations and warranties.

Such opinions are not only untethered to specific conversations with Collins, but go well beyond the evidentiary rules governing the admissibility of lay opinions. Federal Rule of Evidence 701 provides for the admission of lay opinion testimony only where it is:

> (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. The opinions proffered here meet none of these criteria.

The representations and warranties included in the EPMA are standard terms that have gained their meaning from legal practice and doctrine. The opinions of the government's lawyer witnesses with respect to the meaning of such terms are based on their own extensive experience in handling numerous transactions with the same or similar terms, and not based on any particular "perception" they happened to have in the context of the LBO at issue in this case. Similarly, their interpretations and opinions with respect to the PPA are not "rationally based" on any "perception" they had at the time: indeed, none of these witnesses (with the exception of Trosten and Berger) ever saw the PPA until years later when litigation commenced following the collapse of Refco. *See United States v. Yuri Garcia*, 413 F.3d 201, 212 (2d Cir. 2005)

5

(admission of lay opinion testimony is permitted only to give the jury access to "the unique insights of an eyewitness's personal perceptions") (citing *United States v. Grinage*, 390 F.3d 746, 750-51 (2d Cir. 2004); *United States v. Rea*, 958 F.2d 1206, 1215 (2d Cir. 1992) ("[O]pinion evidence may be allowed only if the court finds that the opinion is 'rationally based on' the witness's own perceptions.").

Moreover, to the extent that the meaning of the representations and warranties in the EPMA is not plain to the jury from the language of those provisions themselves (thus rendering any opinion about their meaning unnecessary), their meaning is necessarily a matter of specialized knowledge – knowledge beyond the ken of the laymen and possessed only by skilled practitioners in the field. The government's lawyer witnesses are sophisticated, experienced practitioners, and their testimony about the meaning of representations and warranties is based on their expertise and not on any specific conversation with Collins. Such testimony is in clear violation of section (c) of Rule 701, which prohibits lay opinion testimony based on specialized knowledge. Indeed, Rule 701 was amended specifically to preclude lay witnesses from offering opinions about such matters. Fed. R. Evid. 701(c) & 2000 Advisory Notes. The purpose of the amendment was to "eliminate the risk that the reliability requirements set forth in Rule 702," which governs the opinion testimony of experts, "will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id.* The Second Circuit has held that lay opinion testimony is inadmissible where a witness's opinion depends "in whole or in part, on his specialized training and experience." *United States v. Garcia*, 413 F.3d 201, 216 (2d Cir. 2005). *See also Bank of China v. NBM, LLC*, 359 F.3d 171, 180-82 (2d Cir. 2004) (error to admit "lay opinion testimony," including testimony concerning banking terms and transactions, "because it was not based entirely on [the witness's] perceptions" but on his specialized knowledge).

Also contrary to Rule 701, the opinion testimony the government seeks to introduce is not "helpful" to the jury because the state of mind of the government's witnesses is not relevant to this case. Only Collins's state of mind is relevant to this case: the question is how he understood and interpreted these provisions. What other witnesses thought, independent of any specific conversation with him about the same subject matter, simply cannot serve as a proxy for his state of mind.[4]

The government's lay opinion testimony should be precluded for additional, independent reasons. This case is not about a breach of contract. It is not about whether Collins's client, with Collins's knowledge and acquiescence, breached certain representations and warranties. It is about whether Collins – separate and apart from any contractual violation – was engaged in a fraud. To have multiple witnesses opine on the meaning of contractual provisions distorts the proper focus of this case and confuses the jury, unfairly prejudicing Collins by having the jury consider whether he lived up to a contract as if it were determinative of whether he committed a fraud.

Finally, the opinions of the government's witnesses with respect to whether the PPA should have been disclosed are based on incomplete knowledge and an inadequate foundation. These witnesses, most of them unaware of the PPA at the time, were also unaware of separate legal transactions and related developments undertaken at the time of the LBO to render the PPA

---

[4] The cases cited in the government's brief are not to the contrary. *T.E.A.M. Entertainment v. Douglas,* No. 4 Civ. 1552 (JSR) 2006 WL 587326, at *2 (S.D.N.Y. Mar. 9, 2006), is a civil case concerning a breach of contract in which the parties were permitted to testify as to their respective understandings of the contract's terms. It nowhere discusses the lay opinion rule. *See* Govt. Br. at 6. *United States v. Bronston,* 658 F.2d 920, 930 (2d Cir. 1981), held that opinion testimony is not admissible where the witness had "no contemporaneous conversations or dealings" with the defendant about the subject matter of his testimony. This case supports Collins's position that, absent specific conversations with the defendant, opinion testimony is inadmissible to establish a defendant's state of mind. *See* Govt. Br. 7-8.

meaningless.  Through other contracts and merger transactions, various rights and obligations set forth in the PPA were stripped of all significance.  Opinions that do not take account of all the relevant facts and circumstances are not "helpful" to the jury.  Fed. R. Evid. 701(b).  Nor can they fairly serve as a "proxy" for Collins's state of mind since these witnesses lacked his knowledge of the other relevant facts and circumstances.

## CONCLUSION

For the foregoing reasons, we respectfully urge the Court to deny the Government's Motion To Admit Lay Opinion Testimony Of Certain Fact Witnesses.

Dated: New York, New York
       September 27, 2012

Respectfully submitted,

COOLEY LLP

By: _____
    Jonathan Bach (JPB-9710)
    William J. Schwartz (WJS 8462)

1114 Avenue of the Americas
New York, New York  10036
Phone:  (212) 479-6000
Fax:  (212) 479-6275

*Attorneys for Defendant Joseph P. Collins*

8

# EXHIBIT A

**From:** Allen, MaryBeth (USANYS) [mailto:MaryBeth.Allen@usdoj.gov]
**Sent:** Wednesday, May 27, 2009 8:03 PM
**To:** Allen, MaryBeth (USANYS); Schwartz, William; Bach, Jonathan
**Cc:** Goldin, Nicholas S. (USANYS); Garcia, Christopher (USANYS)
**Subject:** RE: United States v. Joseph P. Collins -- Disclosure

There was a typo in the first email. This is the corrected disclosure with regards to Mr. Sullivan.

During a meeting with the Government in Feb. 2009, Sullivan stated that based on what he knew at the time of the T.H. Lee LBO, if the PPA interest had been bought back by Refco by the time the LBO closed, it was his belief that the interest would not have been material to the LBO.